766 A.2d 1176 (2001)
337 N.J. Super. 275
STATE of New Jersey, Plaintiff-Respondent,
v.
Michael MAZOWSKI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 12, 2000.
Decided February 15, 2001.
*1177 Ivelisse Torres, Public Defender, attorney for appellant, (Kevin G. Byrnes, Designated Counsel, of counsel and on the brief).
Jeffrey S. Blitz, Atlantic County Prosecutor, attorney for respondent, (Jack J. Lipari, Assistant Prosecutor, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges SKILLMAN, CONLEY and LESEMANN.
The opinion of the court was delivered by *1178 LESEMANN, J.A.D.
Defendant Michael Mazowski appeals from his conviction and sentence for third degree burglary and third degree theft. In addition to a number of claims which we find lack merit, defendant argues that the trial court erred in permitting the State to present evidence of his drug addiction and argue to the jury that the addiction constituted a motive for the offenses charged. We agree that reference to defendant's drug use violated the prohibition of N.J.R.E. 404(b) against using evidence of "other crimes" to demonstrate a propensity to commit further crime, and that the evidence was not admissible as "proof of motive." Thus, we reverse.
The burglary and theft in question occurred at the home of Denise and Warren Brandenberger in Mays Landing, where two stereo components, a pair of sunglasses and $700 in cash, were taken from the house. By checking local pawn shops, police were able to track the stolen articles, and they ultimately concluded it was defendant who had pawned them. Defendant was thereupon arrested and questioned. He was given his Miranda warnings and, according to the police, ultimately admitted to burglarizing the Brandenberger house. He was subsequently indicted and pleaded not guilty.
At trial, the prosecutor offered testimony that, during questioning, defendant had spoken of his "drug and alcohol problem" and said he had committed the burglaries "because he needed money." The prosecutor said that comment went to "motive," and thus was admissible under Evidence Rule 404(b). Defense counsel objected, claiming that any relevance from such evidence was outweighed by the prejudice which would redound to defendant. The court ruled, however, that "this shows his motive and it may be prejudicial, but I'm not convinced that it outweighs any other value that the statement may make."
Detective Paul Hoffman of the State Police was then asked whether there came a time "when you spoke to the defendant about drug and alcohol issues"? Detective Hoffman answered, "Yes." He said it was defendant who "brought it up" and he then said the following:
Well, the reason our conversation ran for hours, the reasonhe said things were, you know, occurring. That he had a drug problem and he used cocaine and heroin, and at time he wouldn't sleep for days, then would start drinking alcohol and vodka would totally make his hands and fingers and arms cut and bleed. He just didn't believe he did everything that was being said by him and everything and it was a situation where he just said, I have a drug problem. I need help.
Defense counsel then moved for a mistrial, which was denied. The court said it would give the jury a limiting instruction, which it did as follows:
All right, ladies and gentlemen of the jury, I am going to permit this testimony concerning drug and alcohol problems that the defendant alleges that he had, not to show this defendant is a bad person. I am permitting it for your consideration for a very limited purpose. That is with respect to the motive, the statement alleged by the police witness, that the defendant, Michael Mazowski, suffered from both alcohol and drug abuse and I'm going to instruct you, that you are not to consider that for any other purpose other than, it was said by the defendant, and as to the issue of motive.
Now motive is not required to be proved by the State, however, if the State proves a motive and proves all of the essential elements of the offense beyond a reasonable doubt, then you may look to the defendant's motive. However, to consider this motive, you are only to consider it as it gives meaning to the surrounding circumstances. You are not to consider the motive that the defendant committed this offense. That's something you should not do.
They are not being introduced becauseto show that he has a predisposition to commit the offense, onlybut *1179 only as to the issue of motive. Motive again, don't consider the issue of drugs and alcohol, that this defendant committed this offense. It is only being introduced for the very limited purpose, to the issue of whether or not there was a motive.
Later, during the testimony of Police Officer Tappeiner, who had also participated in defendant's questioning, the following took place:
Q. Speaking to the defendant, did he ever make any statement as to his motivation for committing the burglary and the theft at the Brandenberger's house?
A. Yes.
Q. What did he say?
A. He stated that he had a drug problem.
The court then repeated, in a shortened form, the essence of the limiting instruction set out above.
Defendant testified in his own behalf. He denied the charges against him, and claimed that the pawn shop slip which had implicated him in the sale of the stolen articles had actually been signed in connection with the legitimate sale of a different article and had thereafter been altered to include the articles taken from the Brandenberger house. He also said he had never waived his Miranda rights, that he had been manipulated and coerced by the police, and that he had finally "confessed" only in order to gain some respite from police harassment.
On cross-examination, the prosecutor again raised the subject of defendant's drug problem. He asked what defendant had said to Detective Hoffman about his drug problem, whether the detective had offered him help, whether and when he had been involved in any drug treatment program, whether his was a "bad drug problem" and whether he had "a serious problem with drugs." Again, defense counsel objected and moved for a mistrial, but the objection and motion were overruled. The court did reject the prosecutor's attempt to ask defendant "what the cost of that problem was," but rejected defense counsel's argument that there was no indication defendant had been "on drugs" at the time of the Brandenberg burglary or that he had a current drug problem. The court also rejected counsel's argument that the State was "really trying to paint Mr. Mazowski as a bad person rather than trying to get whether he is guilty or innocent of charges."
Finally, in summation, the State further emphasized defendant's drug condition. At one point, the prosecutor said, "the defendant needed money." Later she said this:
What happened in this case, is entirely understandable, when you think of it as the actions of someone who is addicted to drugs. Addicts don't hold onto money, drugs or property for very long, if they're looking for money for it. The defendant in this case sold the stolen property, as any addict would, the day after.
In his objection to those statements, defense counsel characterized the State's argument as a claim that "all addicts need money, if he has an addiction therefore he's guilty. I think that's obviously not permissible...." The prosecutor, however, replied that,
I didn't say anything about his propensity to commit crime. He admitted to a drug problem, and that's his motive, motive for getting rid ... of the property quickly, for money is his motive. And I never said a word about propensity forthat he's a drug addict.
The court again overruled the objection and permitted the State's argument. In its final charge, the court repeated, in substance, the limiting instruction quoted above.
The jury apparently had some difficulty reaching its verdict. After deliberating for approximately two and one-half hours, it returned with a question concerning the disputed pawn slip. It then deliberated for another half hour before advising that, "we can't agree." After delivering a further charge requesting the jurors to continue *1180 its efforts, the court adjourned deliberations until the next day. When it resumed, the jury did reach a verdict, finding defendant guilty of both burglary and theft. Thereafter, the court sentenced defendant to concurrent extended terms of ten years, with five years parole ineligibility, on each of the two charges.[1] This appeal followed.

I
As a general rule, evidence of a criminal defendant's prior crimes or wrongdoing is inadmissible. The rule, now embodied in N.J.R.E. 404(b), is premised on the virtually self-evident proposition that such evidence is likely to impair the defendant's right to have a jury decide his guilt or innocence based solely on the relevant evidence presented at trial, free of the prejudice that such proof would likely inject into the proceeding. See State v. Stevens, 115 N.J. 289, 302, 558 A.2d 833 (1989); State v. Reldan, 185 N.J.Super. 494, 501-02, 449 A.2d 1317 (App.Div.), certif. denied, 91 N.J. 543, 453 A.2d 862 (1982).
As an exception to that general rule, however, evidence of prior crimes or wrongdoing may be admitted to establish some point at issue in the prosecution other than the defendant's propensity to commit crimes. The general rule and its exceptions are set out as follows in N.J.R.E. 404(b):
Evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
The "other purpose" for which the State claims it may show defendant's drug addiction here is "proof of motive." Because defendant is a drug addict, the State argues, he is constantly in need of money, he cannot hold onto money, and thus he has a "motive" to commit crimes.
The difficulty posed by that extremely broad definition of "motive," is that it does not relate to the particular crime with which defendant is charged, or to any other particular crime. Rather, it is submitted as a reason why defendant commits crime in general. It is an undifferentiated "motive" to steal. As such, except for its label, it is indistinguishable from a claim that defendant has a "disposition," or general propensity to commit crimes, which is precisely what N.J.R.E. 404(b) prohibits.
Further, even were we to accept the State's proposed interpretation of "motive," the broad brush of admissibility which it seeks to apply would read out of the rule the final clause of subsection (b), which says evidence of past crimes or bad acts may be admitted to prove specific matters "when such matters are relevant to a material issue in dispute." See, in that connection, the comment of the Supreme Court Committee which drafted the current Rules of Evidence, noting that the final phrase of N.J.R.E. 404(b) was included "to emphasize" that "ordinarily other crimes evidence is admissible only to prove `some other fact in issue' and not a general disposition to commit crimes or other wrongs." Quoted in Biunno, Current N.J. Rules of Evidence, 1991 Supreme Court Committee Comment to N.J.R.E. 404 (2000). Unless we postulate that in every prosecution for theft, the question of whether the defendant needed money whether he was rich or poor, employed or unemployed, a drug addict or notis a material fact, there is simply no basis to find that defendant's alleged need for money was a "material issue in dispute" here. See State v. Mathis, 47 N.J. 455, 471-72, 221 A.2d 529 (1966), as to the general inadmissibility of evidence designed to show that a defendant lacked money and *1181 thus was likely to have committed the crime with which he was charged.
Generally, in "motive" cases under N.J.R.E. 404(b) or its predecessor, N.J. Evid. R. 55, the evidence in question is designed to show why a defendant engaged in a particular, specific criminal act. For example, the State may want to show that the defendant was seeking revenge against a victim who had cheated him while the two were engaged in a prior criminal act. Or it may claim the defendant was attempting to prevent testimony by a victim concerning the defendant's guilt of a prior crime. Thus, in State v. Collier, 316 N.J.Super. 181, 193, 719 A.2d 1276 (App.Div.1998) aff'd o.b., 162 N.J. 27, 738 A.2d 369 (1999), the State claimed defendant shot his victim in retaliation for the victim's implicating defendant in the mutilation killing of a dog. The court emphasized that the motive evidence was important to the State's case: "The evidence was relevant to prove defendant's motive for robbing and shooting the victim whom he had known for a number of years and with whom his relations had always been friendly. The State needed to show why defendant would rob and shoot his friend intending to kill him."
In State v. Baldwin, 47 N.J. 379, 391, 221 A.2d 199, cert. denied, 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966), the State claimed defendant killed his victim because the victim intended to testify against defendant concerning a prior robbery. The court held that evidence of the prior robbery was admissible to show a motive for defendant's committing the specific act with which he was charged.
State v. Slocum, 130 N.J.Super. 358, 362-63, 327 A.2d 244 (App.Div.1974), involved a defendant accused of robbery and atrocious assault and battery. Evidence that the defendant had robbed the victim on an earlier occasion, that she had testified against defendant concerning that incident, and that he later attacked her in revenge for her earlier action was admissible. Again, the "motive" evidence was related to the specific crime at issue and did not seek to demonstrate a general propensity to commit crime. To the same effect, see State v. Schubert, 235 N.J.Super. 212, 224, 561 A.2d 1186 (App.Div.1989), certif. denied, 121 N.J. 597, 583 A.2d 302 (1990) (defendant's prior threat against his landlord because of a rent increase was admissible to show animosity toward the landlord and motive to commit the arson with which defendant was charged); State v. Homer, 86 N.J.Super. 351, 362-64, 206 A.2d 905 (App.Div.1965) (when defendant was charged with wrongfully removing the body of his brother who had died from a drug overdose, defendant's own use of drugs was admissible to show that his motive for moving the body was to avoid being charged with a narcotics offense); State v. Smith, 55 N.J. 476, 487-88, 262 A.2d 868, cert. denied, 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970) (in trial for assaulting a police officer, evidence that defendant's driver's license had been revoked was admissible to show motive for resistance when officer stopped defendant and asked to see his license).
Those cases and others like them[2] do not suggest that the State may show prior bad acts or criminal behavior in order to demonstrate a characteristic or condition (drug addiction) which makes defendant likely to commit crimes. As noted, such evidence would constitute nothing less than a prohibited attempt (albeit employing different language) to demonstrate "the [criminal] disposition" of a defendant, "in order to show that he acted in conformity" with that disposition in committing the crimes charged against him. See comment of 1991 Supreme Court Committee, supra. And see State v. Hernandez, 334 N.J.Super. 264, 272-73, 758 A.2d 1139 (App.Div. 2000) (dealing with a claim of admissibility under N.J.R.E. 404(b) to show "plan, preparation, intent or constructive possession" *1182 of narcotics, with the court concluding, however, that the "evidence was" "primarily predisposition evidence, namely that since defendant had used [an alleged accomplice who testified against him] ... to sell drugs in the past, it was likely that he had done so again on the day in question. And that is precisely the kind of evidence N.J.R.E. [404(b) ] is intended to exclude)."
Even were we to conclude that proof of defendant's addiction constituted evidence of "motive" within the meaning of N.J.R.E. 404(b), we are satisfied that the prejudicial effect of such evidence far outweighs any probative value it might have and thus it should be barred on that basis. See State v. Cofield, 127 N.J. 328, 605 A.2d 230 (1992).
In Cofield, the Court stressed the need for a careful weighing and balancing of the probative value of "other crimes" evidence against its prejudicial effect. To be admissible, the Court held, such evidence
must be offered for a proper purpose, must be relevant, must have probative value that is not substantially outweighed by the danger of unfair prejudice to the defendant, and must be coupled with a limiting instruction. A proper application of those rules balances the State's interest in presenting the evidence of "other crimes or wrongs" against the possibility of unfair prejudice to the defendant.

[Id. at 334, 605 A.2d 230.]
The Court also acknowledged the difficulty of that weighing and balancing process:
The admissibility of uncharged misconduct has been described as "the single most important issue in contemporary criminal evidence law".... The analogous Federal Rule of Evidence 404(b) has "generated more published opinions than any other subsection of the Federal Rules * * * [and] errors in the introduction of uncharged misconduct are the most frequent basis for reversal in criminal cases."
[Id. at 335, 605 A.2d 230 (citations omitted).]
Cofield involved a trial for drug dealing in which the State used evidence of a subsequent conviction for a like offense to buttress its claim of "constructive possession" of narcotics. While the Court held the evidence could have been admitted on that basis, or as tending to prove "defendant's possession with intent to distribute," it reversed defendant's conviction for failure of the trial court to deliver a proper limiting instruction. In the course of its opinion, it laid down four principles to be applied in determining the admissibility of "extrinsic evidence of other crimes or wrongs":
1. The evidence of the other crime must be admissible as relevant to a material issue;
2. It must be similar in kind and reasonably close in time to the offense charged;
3. The evidence of the other crime must be clear and convincing; and
4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[Id. at 338, 605 A.2d 230.]
Further, to "reemphasize" what it had said in State v. Stevens, supra, the Court noted "that the material issue must be genuinely disputed. For example, if identity is not really in issue, ... it would be improper to justify the use of other-crime evidence on that basis." Id. at 338-39, 605 A.2d 230.
We are satisfied that the evidence in question here does not qualify under the Cofield four-part test. It fails largely because it satisfies neither the first nor the fourth elements of the test.[3] As to the *1183 first prong, it cannot realistically be claimed that defendant's prior drug offenses, or his addiction, is "relevant" to any "material issue" in the present case. The material issues are whether defendant unlawfully entered the Brandenberger house and took the stereo components in question. Whether defendant had a motive or did not have a motive for doing so was neither material nor "genuinely disputed."
Even more significant, however, is the fourth prong of the test: that "the probative value of the evidence must not be outweighed by its apparent prejudice."
Virtually any evidence of "other crimes" will probably entail some risk of prejudice to a defendant. See State v. Hernandez, supra, 334 N.J.Super. at 269-70, 758 A.2d 1139, referring to "the inordinate prejudice to the defendant inherent in other-crimes evidence," the "`widespread agreement that other-crimes evidence has a unique tendency to turn a jury against the defendant'" (quoting from State v. Stevens, supra, 115 N.J. at 302, 558 A.2d 833), and the "inflammatory characteristics of other-crimes evidence." Here, however, the prejudicial nature of the evidence is particularly self-evident and overwhelming. It is difficult to conceive of anything more prejudicial to a defendant than presenting him to the jury as a drug addicta description which one court termed "catastrophic." See People v. Cardenas, 31 Cal.3d 897, 184 Cal.Rptr. 165, 647 P.2d 569, 574 (1982). On the other hand, the argument for admissibility is scant and problematic, premised on the State's a priori assumption that all drug addicts need money, that defendant therefore needed money, that, accordingly, defendant had a propensity to commit crime, and thus the jury should conclude that he committed this crime. The weighing process here comes down heavily against admissibility.
Case law on the prosecution's right to show a defendant's drug addiction in order to demonstrate a motive to steal is virtually non-existent in this State and is mixed elsewhere. Although the State cites two decisions of this court which it claims permits such evidence, State v. Candelaria, 311 N.J.Super. 437, 450-51, 710 A.2d 545 (App.Div.), certif. denied, 155 N.J. 587, 715 A.2d 990 (1998) and State v. Jones, 94 N.J.Super. 137, 140-41, 227 A.2d 145 (App. Div.1967), neither case clearly supports the State's position.
In Candelaria, a robbery victim testified to a statement by the defendant (whom the victim identified as the robber) that he did not want to shoot anybody, "I just want money." The victim said he had also asked the robber why he wanted the money, and the latter responded, "I need drugs." This court refused to reverse defendant's conviction "because the jury learned he [the defendant] had previously used illegal drugs and perpetrated drug offenses." 311 N.J.Super. at 450, 710 A.2d 545. The court said the evidence was admissible as part of the res gestae, describing what the defendant said to the victim during the robbery. However, the court then seemed to suggest its uncertainty as to the propriety of the entire exchange by noting that, "[i]n any event" there was no objection and there was no "plain error." Id. at 451, 710 A.2d 545.
Jones also involved what the court referred to as the "res gestae," with the victim testifying that the person who robbed him said he needed a "fix." The court neither expressed its approval nor condemnation of that testimony, but in any event, the facts there fell far short of what the State did here. Here, we do not have simply a description of what a thief or burglar said while committing a crime. Rather, we have a deliberately presented argument by the State, emphasized and repeated, intended to show that defendant was a lawbreaking drug addict, presumably down and out and in need of money to feed his addiction, and thus was likely to have committed the crime with which he was charged.
As noted, courts from other jurisdictions "have split over the admissibility of evidence of a defendant's drug addiction." *1184 State v. LeFever, 102 Wash.2d 777, 690 P.2d 574, 577 (1984). See also Debra T. Landis, Annotation, Admissibility of Evidence of Accused's Drug Addiction or Use to Show Motive for Theft of Property Other Than Drugs, 2 A.L.R.4th, 1298 (1980).
People v. Cardenas, supra, is a leading case rejecting such evidence as unduly prejudicial. In Cardenas, the court distinguished between the kind of case in which such evidence is offered. Where the crime charged involves theft of narcotics or some other drug offense, proof of defendant's addiction is often admissible. But "where the object of the charged offense was to obtain money or an item other than narcotics," California courts have "unanimously found" such evidence not admissible. In such a case, the "evidence's `probative value to show motive [is] far outweighed by its tendency to incite a jury to resolve the issue of guilt or innocence on [an accused's] character rather than on proof of the essential elements of the crime.'" 184 Cal.Rptr. 165, 647 P.2d at 573. And, the court added, "it cannot be doubted that the public generally is influenced with the seriousness of the narcotics problem ... and has been taught to loathe those who have anything to do with illegal narcotics in any form or to any extent." Id. 184 Cal.Rptr. 165, 647 P.2d at 574.
Gould v. State, 579 P.2d 535 (Alaska 1978), is another leading case rejecting the use of narcotics addiction evidence as showing a generalized "motive" to steal. There the court focused primarily on what it described as the "absence of any `affirmative link' between the robbery and Gould's alleged heroin addiction." Id. at 539. It concluded that the argument premised on "reasoning that because Gould was unemployed and had a $300 a day heroin habit, he had to commit the robbery to support his habit ..., [was] too attenuated and possessing `too many gaps' to show motive and thus the identity of the robber." Ibid.
In State v. LeFever, supra, the Washington Supreme Court discussed both the Cardenas and Gould decisions. It said it concurred in the "views expressed" in those cases, and thus it concluded that where the primary issue at trial was identification of a robber, evidence that defendant "was a heroin user had limited probative value to show that he committed the robberies," and the "resultant prejudice... completely overwhelm[ed] any possible relevance or probativeness." LeFever, supra, 690 P.2d at 578. See also, to the same general effect, Christian v. City of Tuscaloosa, 53 Ala.App. 81, 297 So.2d 405, 408-09 (Crim.App.1974) (holding that evidence of defendant's prior drug use "was too indefinite, tenuous and speculative for the purpose of showing motive or intent... when juxtaposed to its great potency to `over persuade' to the unjust prejudice of defendant," and concluding that, "the evidence of defendant's addiction to or use of drugs amounted, in effect, to an attack on his character by proof of a specific course of improper conduct, which, of course, is not permissible"); Powell v. State, 478 S.W.2d 95, 98 (Texas Crim.App. 1972) (noting that evidence of defendant's narcotics addiction, purportedly to show motive but without relating that evidence to the specific crime with which defendant was charged, amounted to an argument that defendant had a criminal character, and concluding that, "[t]o admit such testimony without showing some affirmative link between the theft and narcotics would show only that the accused is `a criminal generally.' This, the general rule ... prohibits"); United States v. Mullings, 364 F.2d 173, 175-76 (2d. Cir.1966) (rejecting evidence of defendant's drug addiction offered to show that defendant "might have lacked money and therefore might have had a motive to commit the crime," the court concluding that, "this is too remote; the need for money being speculative the motivation can be no better. Whatever probative value this evidence had, it was outweighed by its prejudicial effect. It would place far too much stress on the mere fact of his [defendant's] addiction alone"); United States v. Sutton, 41 F.3d 1257, 1259 (8th Cir.1994), cert. denied, 514 *1185 U.S. 1072, 115 S.Ct. 1712, 131 L.Ed.2d 572 (1995) (holding proof of drug addiction not admissible when motive was not a material issue in the case, and noting that even if it "were a material issue in this robbery case and drug use were probative of it," it would still be barred because its "prejudicial impact" would "substantially outweigh its probative value"); State v. King, 334 S.C. 504, 514 S.E.2d 578, 582-83 (1999) (distinguishing between evidence of defendant's prior thefts from the same victim, which were admissible to show motive or plan, and the State's suggestion that the defendant had a drug habit, which was "inadmissible" because of its "prejudicial effect"); People v. Williams, 63 Mich.App. 389, 234 N.W.2d 537, 539 (1975) (rejecting claim that defendant's alleged drug use was admissible to show motive for stealing "in order to support a drug habit," and concluding that there is "simply no logical connection between the two phenomena" and any "probative value of this evidence, if indeed there was any, is far outweighed by" the prejudice to defendant).
As noted, there are cases which permit evidence of a defendant's drug use or drug addiction in order to show an alleged motive for a crime with which he is charged. See, e.g., United States v. Edwards, 159 F.3d 1117, 1128-29 (8th Cir. 1998) cert. denied, 528 U.S. 825, 120 S.Ct, 75, 145 L.Ed.2d 64 (1999); United States v. Brooks, 125 F.3d 484 (7th Cir.1997); Adams v. State, 272 Ga. 115, 527 S.E.2d 200, 202 (2000); People v. Johnson, 155 A.D.2d 924, 547 N.Y.S.2d 747, 749 (1989), app. den., 75 N.Y.2d 920, 555 N.Y.S.2d 39, 554 N.E.2d 76 (1990). There seems little point to a lengthy analysis of such cases here. Many do not distinguish between "motive," as referring to the reason for committing a particular crime, as opposed to a general "need" or propensity to commit crimes, which we believe amounts to demonstrating a defendant's criminal "disposition" or character, in order to show that he acted in conformity with that propensity. Other cases give less weight to the probable "catastrophic" effect of such evidence on a criminal defendant. None, we believe, offers a persuasive rationale for admitting such tangentially relevant but overwhelmingly prejudicial evidence. Thus, we are satisfied that a proper interpretation and application of N.J.R.E. 404(b) requires rejection of any evidence of defendant's drug addiction in this case. Particularly where, as here, that addiction was not merely noted, but rather was emphasized and re-emphasized, and then argued to the jury as a basis for concluding that defendant had committed the crimes with which he was charged, there is no basis to conclude that the improper use of that evidence was harmless. Its admission requires a reversal.

II
Not much need be said concerning defendant's other claims of error. The trial court's finding that defendant had knowingly and voluntarily waived his Miranda rights, and its conclusion that the pawnshop receipts were admissible under the business records exception to the hearsay rule, N.J.R.E. 803(c)(6), were clearly correct. Defendant's claim that the pawnshop slip had been altered was a matter to be resolved by the jury, to whom the court properly consigned the issue. Defendant's arguments on these points are without merit and do not warrant discussion in this opinion. R. 2:11-3(e)(2). The prosecutor's comment respecting defendant's failure to raise before trial his claim of police harassment was improper and should not have been made. However, defense counsel did not object to the remark, the comment represented a minuscule part of the overall summations of both counsel, and the trial court directed the jury to ignore the statement. We are satisfied that the reference to defendant's silence was not prejudicial, did not constitute plain error, and thus does not provide a separate basis for reversal. State v. Whitehead, 80 N.J. 343, 348, 403 A.2d 884 (1979); see also R. 2:10-2. Except as noted below, all of defendant's other arguments, whether submitted in counsel's brief or in defendant's pro *1186 se brief are either covered in the discussion above or are without merit and do not warrant further discussion. R. 2:11-3(e)(2).

III
With one exception, defendant's argument that his sentence was excessive has no merit. The exception pertains to the trial court's imposing two extended ten year terms, one for each of the offenses of which defendant was found guilty. The State acknowledges that no more than one extended term should have been imposed, N.J.S.A. 2C:44-5a, and that the sentence was, to that extent, improper. Accordingly, if defendant is again convicted following the remand which will follow this opinion, any sentence must be limited to the permissible single extended term.
Defendant's conviction is reversed and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] As noted further in Point III below, the State acknowledges that the court erred in imposing more than one extended sentence. See N.J.S.A. 2C:44-5a.
[2] See, e.g., the extensive list of such cases in Biunno, Current Rules of Evidence, comment 9 on N.J.R.E. 404(b)(2000).
[3] We agree with the comment in State v. Collier, supra, 316 N.J.Super. at 194, 719 A.2d 1276, that "[w]hen motive, rather than pattern, is sought to be shown through other-crime evidence, ... similarity between the alleged other act and the one for which defendant is currently on trial [that is, the second prong of the Cofield test] is not a requirement for admissibility." The "similarity" requirement makes good sense when applied to a claim of admissibility based on showing a pattern on the part of the defendant; it makes no sense when applied where "motive" is the proffered basis for admissibility.