# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5582-15T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

PATRICK O. POWELL, a/k/a
PATRICK EDWARDS, DANIEL
MITCHELL, and EDWARDS P.
MITCHELL,

      Defendant-Appellant.

_____

Submitted September 21, 2018 – Decided  November 14, 2018

Before Judges Simonelli and O'Connor.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 11-11-1869.

Joseph E. Krakora, Public Defender, attorney for appellant (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

A grand jury indicted defendant Patrick O. Powell for first-degree murder of Robert Flagler, N.J.S.A. 2C:11-3(a)(1) and (2) (count one); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count three); first-degree attempted murder of defendant's mother, Irene Powell (Irene),[1] N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3 (count four); fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (count five); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b) (count six).

Prior to the trial, the court granted defendant's motion to sever count five. Defendant subsequently pled guilty to that count. Following a jury trial, defendant was convicted on count four of the lesser-included offense of aggravated assault, N.J.S.A. 2C:12-1(b)(7). The jury was unable to reach a verdict on the remaining charges. Defendant was retried and acquitted on the remaining charges. The court granted the State's motion for a discretionary-term sentence and imposed an eight-year term of imprisonment on count four. The court also imposed a concurrent eighteen-month term of imprisonment on count five and dismissed count six.

_____

[1] We use Irene's first name because she and defendant share the same surname.

A-5582-15T3

On appeal, defendant raises the following contentions:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR SEVERANCE OF THE COUNT ALLEGING ATTEMPTED MURDER AGAINST HIS MOTHER, AND THE ERROR WAS SUFFICIENTLY PREJUDICIAL TO NECESSITATE REVERSAL. [U.S. CONST., AMEND. XIV; N.J. CONST., ART. I, ¶ 10].

POINT II

THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE, NECESSITATING REDUCTION.

We reject these contentions and affirm.

I.

On May 15, 2011, defendant and his stepdaughter, Mary,[2] were at his apartment "just hanging out" with music turned up loudly enough that a conversation could not be heard over it. Defendant became angry that Mary was talking on the telephone, began "yelling and growling" at her to get off the phone, and "grabbed [her] like he was just trying to . . . make [her] get off the

---

[2] This name is fictitious.

A-5582-15T3

phone." Defendant grabbed Mary by the arm and both "went [down] . . . [into a] praying position." Mary was on the phone with her mother, Margaret Hunter,[3] and was "too scared to get off the phone." Mary told Hunter she was "scared" and asked her to "come get her." Mary stayed on the phone while Hunter and Irene were on their way to defendant's apartment. When they arrived at 1:13 p.m., Mary ran from the apartment, passed Irene on the stairway, and left with Hunter.

Irene encountered defendant and unplugged the radio playing the loud music. Defendant became hysterical and began physically assaulting Irene and choking her. Irene began to pass out as defendant released her. At 1:23 p.m. Irene ran down the stairs and out of the building. In her recorded statement to the police, given four or five days after the incident, Irene said:

> At first, [defendant] grabbed by my arm, pulling my arm, and after he kept pulling my arm I got away and after he saw I was getting away because ─and then I pushed him and then he grabbed me by my neck and he caught me right up under here and [held] my neck like that.
>
>     . . . .
>
> I was . . . trying to get to the door, which I did, and I got to the wall of the stairway right there by where you just go up the steps and I was leaning up against it and

---

[3] Hunter was married to defendant at the time of his first trial.

4

he grabbed me again right there because he let me go again and then he grabbed me again and he was holding this and cut . . . on this and I was just going down and he walked away and went back to his apartment.

I almost died.

At approximately 6:20 p.m. on May 15, 2011, Flagler, who lived on the same floor as defendant, was fatally shot in the doorway of his apartment. Flagler's girlfriend heard the gunshot and saw Flagler fall into the apartment. She did not see the shooter, but saw a gun and Flagler's cellphone on the floor in the hallway.

The police responded to the scene and found a handgun and a bloody and broken cellphone in the hallway. When Lieutenant Nick Flora arrived at the scene, he saw defendant open and close the door to his apartment twice. Sergeant Thomas McVicar, who knew defendant, arrived at the scene. Flora knocked on defendant's door with McVicar next to him. When defendant opened the door, Flora saw he was bleeding from his mouth and had a "blank stare on his face." Flora also saw blood on the floor of defendant's apartment and a piece of a cellphone behind defendant. Defendant tried to close the door, but Flora and McVicar prevented him from doing so.

5

The officers entered defendant's apartment and patted him down. McVicar administered Miranda[4] rights to defendant and then asked him, "Patrick, what's up with the old man next door." Defendant replied, "Tom, he came at me with a gun so I shot him." Defendant made "eye contact" with Detective Amy Hulings, who was now on the scene, and said in her presence, "Yeah, I shot him, but he came to my house with a gun." The police arrested defendant and transported him to police headquarters.

Detective Sergeant Brian Cahill interviewed defendant at approximately 7:45 p.m on May 15, 2011. During his video recorded interview, defendant began acting in a bizarre manner; he was mumbling and talking low; his statements were incoherent; and he was howling like a dog and taking his clothes off and being disruptive. Cahill believed defendant's conduct could have been a ploy to stop or disrupt the interview, or a tactic to avoid having his voice recorded.

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

A-5582-15T3

## II.

Defendant filed a motion to sever the attempted murder charge from the murder charge. The motion judge conducted a Cofield[5] analysis in denying the motion. The judge found defendant's conduct toward Irene was relevant to his state of mind, and was relevant to both the State and to defendant as a potential defense. The judge found the two incidents occurred close in time and involved violence. The judge noted this was not a typical N.J.R.E. 404(b) case in which witnesses are ordinarily called to testify at a hearing because the crimes were already joined in the indictment. The judge nevertheless found the State would be able to present clear and convincing evidence that the prior act had been committed, and said her decision was subject to witnesses testifying at trial. The judge also found the probative value far outweighed any prejudice to defendant, and noted the jury would receive an appropriate limiting instruction.

Defendant concedes that the judge applied the appropriate standards in denying his motion, but argues the judge erred in finding that evidence of his conduct toward Irene was relevant to the murder charge because it was probative of his state of mind. We disagree.

---

[5] State v. Cofield, 127 N.J. 328, 338 (1991).

Rule 3:7-6 allows for two or more offenses to be charged together in the same indictment "if the offenses charged are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan." Under Rule 3:15-1:

> (a) Permissible Joinder. The court may order [two] or more indictments or accusations tried together if the offenses and the defendants, if there are [two] or more, could have been joined in a single indictment or accusation . . . .
>
> (b) Mandatory Joinder. Except as provided by R. 3:15-2(b), a defendant shall not be subject to separate trials for multiple criminal offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction and venue of a single court.
>
> [(Emphasis added).]

Finally, under Rule 3:15-2(b), "[i]f or any other reason it appears that a defendant or the State is prejudiced by a permissible or mandatory joinder of offenses . . . in an indictment . . . the court may order an election or separate trials of counts[.]"

We review a court's ruling on a severance motion for abuse of discretion. State v. Chenique-Puey, 145 N.J. 334, 341 (1996). The decision whether to deny

8

defendant's motion to sever counts at trial "rests within the trial court's sound discretion and is entitled to great deference on appeal." State v. Brown, 118 N.J. 595, 603 (1990). Thus, the "[d]enial of such a motion will not be reversed in the absence of a clear showing of a mistaken exercise of discretion." State v. Krivacska, 341 N.J. Super. 1, 38 (App. Div. 2001).

In ruling on a motion to sever, the court should consider the potential harm to the defendant, as well as the need for judicial economy and expediency. State v. Coruzzi, 189 N.J. Super. 273, 297 (App. Div. 1983). The key to determining whether joinder is prejudicial to a defendant is whether, if the crimes were tried separately, evidence of the severed offenses would be admissible under N.J.R.E. 404(b) in the trial of the remaining charges. Chenique-Puey, 145 N.J. at 341. "If the evidence would be admissible at both trials, then the trial court may consolidate the charges because 'a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" Ibid. (quoting Coruzzi, 189 N.J. Super. at 299).

N.J.R.E. 404(b) provides, in pertinent part, that:

> evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of

mistake or accident when such matters are relevant to a material issue in dispute.

The courts use a four-pronged test to determine the admissibility of evidence under N.J.R.E. 404(b):

> 1.    The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2.    It must be similar in kind and reasonably close in time to the offense charged;
>
> 3.    The evidence of the other crime must be clear and convincing; and
>
> 4.    The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [Cofield, 127 N.J. at 338 (quoting Abraham P. Ordover, Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b), and 609(a), 38 Emory L.J. 135, 160 (1989)).]

To satisfy the first prong, the evidence must have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." See N.J.R.E. 401 (defining "relevant evidence"). "Consequently, to be relevant, the other-crimes evidence must bear on a subject that is at issue at the trial, for example, an element of the offense or some other factor such as motive, opportunity, intent, or plan." State v. P.S., 202 N.J. 232, 255 (2010). "In relevance determinations, the analysis focuses on 'the logical connection

between the proffered evidence and a fact in issue.'" State v. Williams, 190 N.J. 114, 123 (2007) (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 15 (2004)). Where the fact to be proven is an element of the offense, such as motive and intent, the relevance prong is satisfied. See State v. Davidson, 225 N.J. Super. 1, 12-13 (App. Div. 1988) (holding that other crimes evidence is admissible where the State must prove an element of the offense).

Other crimes evidence may be admissible under N.J.R.E. 404(b) on the issue of motive. See State v. Collier, 316 N.J. Super. 181, 195 (App. Div. 1998). "Generally, in 'motive' cases under N.J.R.E. 404(b) . . . the evidence in question is designed to show why a defendant engaged in a particular, specific criminal act." State v. Mazowski, 337 N.J. Super. 275, 283 (App. Div. 2001). Thus, in contrast to pattern evidence, establishing motive does not require similarity between the other bad acts and the crime charged. Id. at 286 n. 3. Other crimes evidence may be admissible under N.J.R.E. 404(b) if it discloses the defendant's mental intention or purpose when he committed the offense or to negate the existence of innocent intent. State v. J.M., Jr., 438 N.J. Super. 215, 223 (App. Div. 2014).

The second prong of the Cofield test is not found in N.J.R.E. 404(b). Therefore, it "need not receive universal application in [N.J.R.E.] 404(b)

disputes." Williams, 190 N.J. at 131. Proof of the second prong is not required in all cases, but only in those that replicate the facts in Cofield, namely, illegal drug possession, which is not the case here. Id. at 130-31; State v. Carlucci, 217 N.J. 129, 141 (2014).

The third prong requires clear and convincing proof that the person against whom the evidence is being used actually committed the other crime or wrong. Carlucci, 217 N.J. at 143; Cofield, 127 N.J. at 338.

The fourth prong is typically the most difficult to overcome. State v. Barden, 195 N.J. 375, 389 (2008). "Because of the damaging nature of such evidence, the trial court must engage in a 'careful and pragmatic evaluation' of the evidence to determine whether the probative worth of the evidence is outweighed by its potential for undue prejudice." Ibid. The analysis incorporates balancing prejudice versus probative value as required by N.J.R.E. 403, but does not require, as does N.J.R.E. 403, that the prejudice substantially outweigh the probative value of the evidence. State v. Reddish, 181 N.J. 553, 608 (2004). The risk of undue prejudice must merely outweigh the probative value. A "very strong" showing of prejudice is required to exclude motive evidence under this prong. State v. Castagna, 400 N.J. Super. 164, 180 (App. Div. 2008).

Under the fourth prong, the trial court must also consider if other less prejudicial evidence may be presented to establish the same issue on which the other crimes or wrongs evidence was offered. P.S., 202 N.J. at 256. In addition, in order to minimize "the inherent prejudice in the admission of other-crimes evidence, our courts require the trial court to sanitize the evidence when appropriate." Barden, 195 N.J. at 390. Finally, the trial court must provide a limiting instruction, both when the evidence is presented and in the final instructions, to inform the jury of the purposes for which it may and may not consider the evidence of defendant's uncharged misconduct. Ibid.

Under the facts presented here, the judge did not abuse her discretion in denying defendant's motion to sever the attempted murder charge from the murder charge. The judge conducted a Cofield analysis and found the relevant factors had been met. As to the first Cofield factor, the judge determined that defendant's conduct toward his mother was clearly probative of his mental state on the date in question, and defendant's state of mind was relevant both to the State and to defendant as a potential defense. As to the third factor, the judge found the State would be able to prove by clear and convincing evidence that defendant committed the prior act. The judge noted that, in order to prove the attempted murder charge, the State would have to call defendant's mother to

testify at trial, and the testimony would be direct evidence of defendant's guilt. As to the fourth factor, the judge found that the probative value of the evidence substantially outweighed by any prejudice to defendant, and noted the jurors would receive a limiting instruction about the evidence. We conclude the judge's reasoning is sound and discern no reason to reverse her denial of defendant's motion to sever.

## III.

Defendant challenges his sentence in Point II. He does not dispute that the number of his prior convictions rendered him eligible for an extended-term sentence under N.J.S.A. 2C:44-3(a). Rather, he argues the judge failed to consider the entire range of sentences available for a third-degree crime, the danger to the public, and defendant's exemplary conduct and achievement between the time of conviction and sentencing. Defendant also challenges the judge's findings of aggravating and mitigating factors.

Our review of a sentence is limited. State v. Miller, 205 N.J. 109, 127 (2011). We review a judge's sentencing decision under an abuse of discretion standard. State v. Fuentes, 217 N.J. 57, 70 (2014). As directed by the Court, we must determine whether:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the

14

sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."

[Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

We have considered defendant's arguments in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons the judge expressed at sentencing. We are satisfied that the judge did not violate the sentencing guidelines and the record amply supports her findings on aggravating and mitigating factors. The sentence is clearly reasonable and does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-5582-15T3