# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0667-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.S.C.,

     Defendant-Appellant.

_____

Argued September 18, 2018 – Decided September 25, 2018

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 13-02-0138.

Michael J. Confusione argued the cause for appellant (Hegge & Confusione, LLC, attorneys; Michael J. Confusione, of counsel and on the briefs).

Adam D. Klein, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Adam D. Klein, of counsel and on the brief).

PER CURIAM

Defendant J.S.C. appeals from his conviction and sentence following a jury trial for first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(a); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a). The victim was his biological son, Jason.[1] For the following reasons, we affirm the conviction and sentence.

## I.

A jury convicted defendant of sexually abusing Jason and directing his wife to sexually abuse Jason based on evidence the abuse occurred in the family's residence between June 2010 and February 2012, when Jason was thirteen to fourteen years old.[2]

Jason testified the first incident of abuse occurred in summer 2011 when his father asked him "out of nowhere" if he ever wondered what it was like to be with a girl. Jason stated on four occasions his father woke him up in the middle of the night, blindfolded him, and led him to the family's living room

---

[1] We use a pseudonym for the name of the victim, do not refer to his mother by name, and identify the defendant by his initials to protect the identity of the victim.

[2] Defendant's wife was also indicted but is not a party to this appeal.

A-0667-16T4

where he orchestrated sexual interactions, including oral intercourse and vaginal penetration, between Jason and "some woman [Jason] never even knew."

Jason further testified his relationship with his father "shifted" when defendant asked him if he "ever wondered how it felt to be with a man," to which Jason responded "no." Defendant then made Jason perform oral sex on him, which defendant referred to as "practice." Defendant conditioned things Jason wanted, such as a cell phone, guitar, or attending Burlington County Institute of Technology, on him partaking in these practice sessions. As Jason stated, "I'd say I want something, he'd say you haven't earned it, you haven't practiced enough." Jason estimated his father made him "practice" about fifteen times.

Not limited to the sexual abuse involving oral sex, Jason testified defendant attempted anal intercourse on him as well. For instance, when Jason wanted an electric guitar for Christmas, defendant told him he "hadn't practiced enough for it. Or [his] practice was getting low." Jason testified he had to allow defendant to "anally penetrate [him] in order for me to earn that guitar."

These abusive encounters further escalated when defendant twice involved Jason's biological mother. Jason testified defendant "brought [him] in the shower with her and had [him] fondle her breasts." His mother had "no response to it" and "just let it happen" when he entered the shower.

A-0667-16T4

Jason further testified that one week later, his father brought him into his mother's bedroom and "laid her down and had [Jason] insert [his] hand into her vagina and stimulate her," before he "told [Jason] to lay on the bed," proceeded to lay next to him, and his mother "gave [them] both oral."

For her part, Jason's mother testified regarding these incidents, detailing two occasions in which Jason touched her breasts and penetrated her with his fingers at defendant's urging and instruction. She stated she was initially against it, but eventually agreed to her husband's proposal "[b]ecause [she] knew [defendant], if he said he was going to do something, he was going to do it. There was no stopping him." She also stated defendant told her he "wouldn't mind [doing] something like that once a month." Jason's mother stated she did not agree, but defendant offered to have her broken tooth fixed. This broken tooth caused her pain, and factored into her decision-making process, leading her to take part in the sexual abuse.

In February 2012, Jason reached a breaking point when he "felt like [he] couldn't bottle it up anymore and . . . needed to talk to someone." He informed his aunt, who told him "we need to stop this now," and called his mother, who then drove him to the Delran Township Police Department.

Jason was then taken to the Burlington County Child Advocacy Center where he spoke with Detective Wayne Raynor of the Burlington County Prosecutor's Office. Jason described the abuse he endured, and Raynor organized a telephone intercept between Jason and defendant. During this approximately forty-five minute phone call, Jason confronted defendant. Although the telephone intercept did not elicit a confession, defendant stated "I'll tell you something, you can tell anybody you want but honestly, your mom's secrets are gonna come out of the closet too. And by the time you get done you'll lose both of us. Do you want that?"

Thereafter, at approximately 3:13 a.m., detectives went to defendant's home, and asked him to come to the Delran Police Department for an interview. Defendant agreed to go to the police department for the interview. No details were provided to defendant regarding the nature of the interview.

Upon arrival at the police department, defendant was read his <u>Miranda</u>[3] rights before making a recorded statement to the police. Defendant initially denied the allegations against him, stating "I haven't touched this kid." However, he later admitted Jason performed oral sex on him, claiming it was Jason's idea, stating it began when Jason "wanted to try oral," and it lasted for a

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

"[c]ouple of minutes. He said he was alright with it. I was like OK. We just let it go at that point."

As questioning progressed, defendant made reference to Jason's mother, prompting detectives to further question him about her. In response, defendant stated, "[h]e knows his mom's not an angel," and, after an additional question, stated, "I'm going to plead the 5th on that one. . . . We're not going to talk about that."

Although he initially denied engaging in anal intercourse with Jason, he later stated, "I didn't have anal sex with him. He pretended to sit down. It never even went even in." He added, "I know he put the lube on his butt, he went to sit down, he couldn't. Tried it again, he couldn't. That's pretty much all that ever happened." Defendant was then arrested.

A Burlington County Grand Jury charged defendant with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2)(a) (counts one, two, three, four, five, ten, eleven, twelve, thirteen, and fourteen); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (counts six, seven, eight, nine, fifteen, sixteen, seventeen, eighteen, twenty, and twenty-one); and third-degree promoting prostitution, N.J.S.A. 2C:34-1(b)(6).

On March 30, 2015, the judge granted defendant's unopposed motion to sever counts one through twenty-one from counts twenty-two through thirty-six. The judge also granted defendant's unopposed motion to dismiss counts twenty-seven, twenty-eight, and twenty-nine as time-barred.

Defendant moved to suppress his recorded statement to police on Fifth Amendment and Miranda grounds. After conducting a Miranda hearing on May 26, June 22, July 13, and July 16, 2015, the court issued a detailed oral decision denying defendant's motion. The trial court found the only witness, Detective Raynor, to be credible and believable.

The judge found defendant was properly Mirandized and signed the Miranda card without hesitation and without asking any questions. Defendant said he was willing to answer questions. The judge concluded defendant's will was not overborne in any way and his waiver was voluntary, knowing and intelligent, and that "at no time did [defendant] indicate that he wanted to revoke his consent, that he wanted to consult with counsel, or that he did not want to continue the investigation with the officers." The judge also concluded the State proved beyond a reasonable doubt that defendant's statement was freely and voluntarily made.

A-0667-16T4

The judge further found the only objection raised by defendant during the two-hour interview related to a question involving his wife. He also found defendant was able to understand the questions.

From the inception of this case, defendant was represented by assigned attorney Timothy P. Reilly. During a March 21, 2016 pre-trial conference, the judge noted, "there was some discussion of [defendant], perhaps, seeking new counsel at this point [in] the case." To this end, the judge informed defendant's attorney it was "highly unlikely the Court would allow Mr. Reilly to get out of the case at this point," and if a substitution of attorney was allowed "that would in no way, shape or form delay the trial at all," as this is a "very old case." The new counsel was retained by defendant's family to represent him at trial.

Trial was initially scheduled for April 5, 2016, but was postponed two weeks because Mr. Reilly was scheduled for another trial. During an April 15, 2016 pre-trial conference, defendant requested an adjournment of the trial so his privately retained counsel could prepare for trial. The judge declined defendant's request to adjourn the start of trial, stating April 19, 2016, was a firm date.

A jury trial was held between April 19 and May 3, 2016. The jury found defendant guilty on two counts of first-degree aggravated sexual assault (counts

two and eleven), three counts of second-degree endangering the welfare of a child (counts nine, eighteen, and twenty-one), and the lesser-included offense of third-degree aggravated criminal sexual contact (count ten). Defendant also pleaded guilty to an additional count of first-degree aggravated sexual assault under count 25 of the indictment.

Defendant was sentenced on August 26, 2016. The trial court made the following findings during the sentencing hearing. During diverse dates over a nineteen-month period, defendant forced Jason to perform fellatio upon him for "practice" and to obtain gifts. On multiple other occasions, defendant attempted to perform anal sex upon Jason. The sexual assaults were "demeaning and humiliating," with each act operating as "a separate indignity to the victim." The crimes were "committed in a particularly heinous, humiliating and cruel manner," using "his title as a father to satisfy his own sick, perverted sexual desires and he did so in the most unimaginable and perverted way possible." The judge stated he could "think of no more humiliating and reprehensible act" than to engage in this conduct and thereby commit "the ultimate betrayal and breach of trust that is typically inherent in the father-son relationship."

The trial court found aggravating factors one (nature and circumstances of the offense, including whether it was committed in an especially heinous,

cruel, or depraved manner), N.J.S.A. 2C:44-1(a)(1); two (gravity and seriousness of harm, including whether defendant knew or should have known the victim was particularly vulnerable or incapable of resistance), N.J.S.A. 2C:44-1(a)(2); three (risk to reoffend), N.J.S.A. 2C:44-1(a)(3); and nine (need to deter), N.J.S.A. 2C:44-1(a)(9). Although defendant had not previously been convicted of a crime, he had been convicted of two disorderly persons offenses in 2007. The court gave substantial weight to aggravating factors one and two and moderate weight to aggravating factors three and nine.

The court found mitigating factor seven (lack of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time), N.J.S.A. 2C:44-1(b)(7), and gave it moderate weight. The court also found mitigating factor twelve (cooperation with law enforcement), N.J.S.A. 2C:44-1(b)(12), and gave it "lesser weight." The court found the aggravating factors substantially preponderated over the mitigating factors on both a qualitative and quantitative basis.

With regard to whether to impose consecutive or concurrent sentences, the court noted there can be no free crimes, citing State v. Yarbough, 100 N.J. 627 (1985). The court found the crimes and their objectives were not predominantly independent of each other, having been "done with the same

objective, to embarrass and harass and humiliate the victim, to exercise control over the victim and to satisfy defendant's own perverted sexual desires." Although the crimes were perpetrated on a single victim, the court found the offenses "involved separate acts of violence at different times and in different manners" over a nearly two-year span. The court noted the assaults occurred in different areas of the house and "were not done so close in time as to constitute one incident of aberrant behavior." The court indicated it was not imposing numerous sentences.

Defendant was sentenced to an aggregate thirty-nine-year term. On count two, defendant was sentenced to a seventeen-year term, subject to an eighty-five percent period of parole ineligibility and a mandatory five-year period of parole supervision pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On count eleven, the court imposed a consecutive seventeen-year NERA term. On count ten, defendant was sentenced to a consecutive five-year term. The court also imposed a concurrent ten-year NERA term for the first-degree aggravated sexual assault to which defendant pleaded guilty (count twenty-five). The court also ordered defendant to comply with all provisions of Megan's Law, N.J.S.A. 2C:7-2, and parole supervision for life, N.J.S.A. 2C:43-6.4, and imposed appropriate fines and penalties. The court merged counts nine,

11

eighteen, and twenty-one for sentencing purposes, and dismissed the remaining counts of the indictment. This appeal followed.

On appeal, defendant raises the following points:

POINT ONE

THE TRIAL COURT VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO COUNSEL (Plain Error; Not Raised Below).

POINT TWO

DEFENDANT'S ASSIGNED TRIAL ATTORNEY PROVIDED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE (Plain Error; Not Raised Below).
POINT THREE

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS HIS STATEMENTS ON MIRANDA AND FIFTH AMENDMENT GROUNDS.

POINT FOUR

TOO MUCH [RULE] 404(b) EVIDENCE WAS ALLOWED BEFORE THE JURY THAT, CUMULATIVELY, UNFAIRLY PREJUDICED DEFENDANT ON THE ACTUAL CHARGES AT ISSUE.

POINT FIVE

THE TRIAL COURT INFRINGED DEFENDANT'S RIGHT TO A FAIR AND IMPARTIAL JURY PANEL BY DECLINING TO REMOVE A TAINTED JUROR FROM THE PANEL.

<u>POINT SIX</u>

DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

II.

Defendant contends the trial court erred by declining to adjourn the trial to allow privately-retained counsel to substitute for assigned counsel; however, the trial court never received a formal adjournment request. Rather, counsel made an informal inquiry.

The decision to allow or deny an adjournment is discretionary. <u>State v. Hayes</u>, 205 N.J. 522, 537 (2011). We review a trial court's decision to deny an adjournment request under an abuse of discretion standard. <u>Ibid.</u> Therefore, "a trial court's decision to deny a request for an adjournment to permit a defendant to retain counsel of his choice will not be deemed reversible error absent a showing of abuse of discretion which caused defendant 'manifest wrong or injury.'" <u>Ibid.</u> (quoting <u>State v. McLaughlin</u>, 310 N.J. Super. 242, 259 (App. Div. 1998)).

"[A] defendant's right to counsel of choice 'is not absolute' and may be balanced against the demands of the court's calendar, among other issues . . . ." <u>State v. Kates</u>, 216 N.J. 393, 396 (2014) (citations omitted). <u>See also</u> <u>State v. Furguson</u>, 198 N.J. Super. 395, 401 (App. Div. 1985) (recognizing "[a] trial

13

court . . . must have the power to tightly control its own calendar so that the assignment of cases cannot be manipulated by the defense counsel or the defendant.").

"What constitutes a reasonable adjournment to permit a defendant to retain counsel of his own choice depends upon the surrounding facts and circumstances." Hayes, 205 N.J. at 538 (quoting Furguson, 198 N.J. Super. at 402). The factors included in this determination are set forth in United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978) and were adopted by our courts in Furguson, 198 N.J. Super. 395. The Burton/Furguson factors include:

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [Furguson, 198 N.J. Super. at 402 (quoting Burton, 584 F.2d at 490-91).]

14

"[T]he availability of other competent counsel, while relevant, is no substitute by itself for the constitutional right to counsel[.]" Kates, 216 N.J. at 396 (citations omitted). Nevertheless, "a deprivation of the right only occurs when the court mistakenly exercises its discretion and erroneously or arbitrarily denies a continuance to retain chosen counsel." Ibid. (citations omitted). As such, "[i]f a trial court conducts a reasoned, thoughtful analysis of the appropriate factors, it can exercise its authority to deny a request for an adjournment to obtain counsel of choice." Id. at 396-97 (citing McLaughlin, 310 N.J. Super. at 260). The Court emphasized that a deprivation of the right to counsel can only be found "if a trial court summarily denies an adjournment to retain private counsel without considering the relevant factors, or abuses its discretion in the way it analyzes those factors. Structural error is not triggered otherwise." Id. at 397.

Abuse of discretion warranting reversal and remand has been found where the defendant is otherwise left without competent counsel to represent him. See Hayes, 205 N.J. at 536-37. Abuse of discretion has also been found when the trial court does not provide its reasoning for denying an adjournment request. Kates, 216 N.J. at 397.

A-0667-16T4

Here, the circumstances surrounding defendant's informal adjournment request are wholly distinguishable from the cases relied upon by defendant. Unlike Hayes, where defendant's conflict-based adjournment request was denied "effectively leaving him without counsel," there was no such circumstance precluding Mr. Reilly from representing defendant at trial. Further, this matter is distinguishable from Kates, where the defendant would be forced to change counsel mid-trial after learning of his counsel's pending military deployment on the dawn of trial. Here, Mr. Reilly had been representing defendant since the inception of this case and was ready, willing, and able to try the case. Further, this matter is distinguishable from State v. Martinez, 440 N.J. Super. 537 (App. Div. 2015), where the record was devoid of any rationale behind the court's denial of the adjournment.

Defendant was indicted in February 2013. He was represented by Mr. Reilly for the two years preceding the trial. Trial was originally scheduled for April 5, 2016, but adjourned to April 19, 2016, because Mr. Reilly had another trial scheduled. During a March 21, 2016 case management conference, the trial judge noted "there was some discussion of [defendant], perhaps, seeking new counsel at this point of the case." The judge directed Mr. Reilly to inform defendant:

it's highly unlikely the [c]ourt would allow Mr. Reilly to get out of the case at this point. But, even if the [c]ourt did allow Mr. Reilly or allowed a substitution of attorney for Mr. Reilly, that would in no way, shape or form delay the trial at all. This is a very old case. We've had this scheduled for some time. And so, [J.S.C.], if he wishes to get new counsel, and the court allows him to do so, would do so at his own peril because the [c]ourt would not delay the trial . . . ."

During a subsequent case management conference, the judge told defendant, "you're free to get whoever you want, but they have to be prepared, because there are time frames and deadlines that need to be met for the efficient resolution of this case. This case is extremely old." The judge noted "[t]here's a need for finality and closure, not just for yourself but for the victim as well. So the 19th is the trial date. I want to move forward on that date and time." Jury selection commenced on April 19, 2016.

When defendant's privately retained counsel entered an appearance the trial was still one month away. Private counsel advised defendant he could be ready to try the case in thirty days. Therefore, a further trial postponement was not necessary for private counsel to be ready for trial. Moreover, private counsel did not make a formal trial adjournment request. Instead, he withdrew from the case upon learning April 19, 2016, was a firm trial date.

17

During the final case management conference, Mr. Reilly confirmed privately retained counsel withdrew from representing defendant. Mr. Reilly did not request an additional trial postponement at that time.

Considering the age of the case, the prior two-week trial adjournment, the readiness of trial counsel to proceed, the right of the trial court to control its calendar, the impact on the victim, and the need for closure, the trial court declined to further postpone the trial. We conclude the trial court considered and weighed the appropriate factors in reaching that decision. The denial of defendant's adjournment request resulted in no identifiable prejudice and was not "clearly unreasonable in the light of the accompanying and surrounding circumstances." Hayes, 205 N.J. at 539 (citation omitted). We discern no abuse of discretion by the trial court in declining to adjourn the trial.

## III.

Defendant also contends his trial attorney rendered ineffective assistance of counsel by failing to request a trial adjournment so defendant's newly retained private counsel could represent him at trial. We decline to consider defendant's arguments in the present context, applying the "general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record."

18

State v. Preciose, 129 N.J. 451, 460 (1992). To that end, a claim of ineffective-assistance-of-counsel is best addressed in a post-conviction relief proceeding. Ibid.; State v. Morton, 155 N.J. 383, 433 (1998). Our decision does not preclude defendant from raising his ineffective-assistance-of-counsel claim in a timely filed petition for post-conviction relief. See Morton, 155 N.J. at 433 (citing State v. Marshall, 148 N.J. 89, 147-54 (1997) (permitting defendant to raise ineffective-assistance-of-counsel claims on post-conviction relief proceeding despite rejection of these claims on direct appeal)).

IV.

Defendant next contends the trial court erred in denying his motion to suppress his recorded statements to detectives during his initial questioning at the Delran police department, on Miranda and Fifth Amendment grounds. Specifically, when questioned regarding his wife, defendant stated: "I'm going to take the 5th on that one. . . . We're not going to talk about that." Defendant argues his Fifth Amendment rights were violated because detectives continued questioning him following this answer. We disagree.

When reviewing a trial court's decision on a motion to suppress, we defer to the trial court's findings supported by sufficient credible evidence in the record, particularly when they are grounded in the judge's feel of the case and

19

ability to assess the witnesses' demeanor and credibility. State v. Robinson, 200 N.J. 1, 15 (2009); State v. Elders, 192 N.J. 224, 243-44 (2007). We review legal issues de novo. State v. Shaw, 213 N.J. 398, 411 (2012); State v. Vargas, 213 N.J. 301, 327 (2013). We will not reverse a motion court's findings of fact based on its review of a recording of a custodial interrogation unless the findings are clearly erroneous or mistaken. Robinson, 200 N.J. at 16-17.

The record demonstrates defendant was properly advised of his Miranda rights and his waiver of those rights was made knowingly and intelligently. The trial court held the State had proven defendant's statement was made freely and voluntarily. At no time during the questioning did defendant indicate he sought to revoke his consent, that he wanted to consent with an attorney, or that he sought to terminate the interview. Instead, defendant invoked his Fifth Amendment right to remain silent only with regard to a question regarding his wife. The detectives scrupulously honored defendant's rights to the extent of the invocation by not furthering their inquiry regarding his wife.

"A person can assert the right to remain silent by 'indicat[ing] in any manner, at any time prior to or during questioning, that he wishes to remain silent.'" State v. Bruno-Taylor, 400 N.J. Super. 581, 590 (App. Div. 2008) (alteration in original) (quoting Miranda, 384 U.S. at 473-74). "[A] defendant

can invoke Fifth Amendment protection against self-incrimination for a limited purpose, and statements outside the scope of that limited invocation are admissible." State v. Adams, 127 N.J. 438, 446 (1992) (citing Connecticut v. Barrett, 479 U.S. 523, 529 (1987)); see also State v. Gerald, 113 N.J. 40, 116 (1988); State v. Shelton, 344 N.J. Super. 505, 515-16 (App. Div. 2001).

Here, defendant never invoked the right to remain silent beyond his refusal to answer questions regarding his wife. Any question about his intent when he indicated he would not answer questions regarding his wife is dispelled by his unambiguous willingness to talk about other aspects of the investigation despite thoroughly understanding his rights. See Adams, 127 N.J. at 446-47. The trial court properly denied defendant's motion to suppress his statement to police.

V.

We next address defendant's argument "too much [Rule 404(b)] evidence was allowed before the jury that, cumulatively, unfairly prejudiced defendant on the actual charges at issue." Defendant specifically objects to his wife's testimony regarding his "manipulative" and controlling nature, arguing the issue at trial involved crimes committed against his son, not his wife. We are unpersuaded by this argument.

21

N.J.R.E. 404 involves character evidence not admissible to prove conduct, exceptions, and evidence of other crimes. N.J.R.E. 404(b) applies to other crimes, wrongs, or acts, and provides:

> Except as otherwise provided by Rule 608(b) evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

"As a general rule, evidence of a criminal defendant's prior crimes or wrongdoing is inadmissible." State v. Mazowski, 337 N.J. Super. 275, 281 (App. Div. 2001). This rule "is premised on the virtually self-evident proposition that such evidence is likely to impair the defendant's right to have a jury decide his guilt or innocence based solely on the relevant evidence presented at trial, free of the prejudice that such proof would likely inject into the proceeding." Ibid. (citing State v. Stevens, 115 N.J. 289, 302 (1989)). However, N.J.R.E. 404(b) does not apply to evidence directly relating to the commission of the crime for which defendant is on trial. State v. Muhammad, 359 N.J. Super. 361, 390-91 (App. Div. 2003) (admitting evidence pertaining to a robbery when other charges included conspiracy to commit robbery).

22

The sexual assaults defendant committed against his son involved his wife, thus making her testimony relevant. The indictment charged defendant with directing Jason to perform digital penetration of his mother (counts three and twelve), directing Jason to engage in vaginal intercourse with his mother (counts four and thirteen), and directing Jason's mother to perform fellatio on him (counts five and fourteen). The indictment also charged defendant with related endangering the welfare of a child counts.

The trial court properly admitted testimony regarding defendant's manipulative and controlling nature as relevant and probative evidence of defendant directing his wife to commit various sexual acts against Jason. Defendant's "manipulative nature" is directly relevant to this conduct, and the charges for which he was on trial. See ibid. The admission of such testimony was not error.

## VI.

Defendant contends his right to trial by an impartial jury was infringed by the trial court declining to remove a juror who had read a portion of defendant's statement that should have been redacted. We disagree.

A criminal defendant is entitled to be tried before an impartial jury "that is free from outside influence and will decide the case according to the

23

evidence." State v. Williams, 93 N.J. 39, 60 (1983). When a juror may have been exposed to such influence or extraneous information, "the trial judge must make a probing inquiry into the possible prejudice caused by any jury irregularity, relying on his or her own objective evaluation of the potential for prejudice rather than on the jurors' subjective evaluation of their own impartiality." State v. Scherzer, 301 N.J. Super. 363, 487-88 (App. Div. 1997) (citations omitted). In making this determination, a trial court

> is obligated to interrogate the juror, in the presence of counsel, to determine if there is a taint; if so, the inquiry must expand to determine whether any jurors have been tainted thereby. The trial court must then determine whether the trial may proceed after excusing the tainted jurors, or whether a mistrial is necessary.
>
> [State v. R.D. 169 N.J. 551, 558 (2001) (citations omitted).]

However, a new trial "is not necessary in every instance where it appears an individual juror has been exposed to outside influence." Id. at 589 (citing Smith v. Phillips, 455 U.S. 209, 217 (1982)). Indeed, "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." Smith, 455 U.S. at 217.

The jurors were provided with portions of the transcript of a videotaped statement defendant made to the police. Inadvertently, juror fourteen read a

portion of page seventy-nine of defendant's statement, which should have been redacted, detailing defendant having been sexually abused when he was young. When this was discovered, the trial court promptly made a diligent inquiry of juror fourteen. The juror indicated he did not share the information he read with the other jurors. He further stated that, although he read the page seventy-nine, he did not recall the contents "in great detail," and did not "have a hundred percent recollection" because he was "perusing through [the] document." The juror did not believe what he read would make it difficult to be fair and impartial.

The trial court also provided the following instruction to the jury regarding their consideration of the statement:

> I instruct you that in this case certain portions of the videotaped statements have not been provided to you. You may only consider those portions of the statements which have been provided to you. You may only consider those portions of the statement which have been admitted into evidence and must not speculate as to the content of the omission or the reason for the omission.
>
> In that regard, there were certain parts of defendant's videotaped statement that were redacted. The transcript which you were provided did not remove the entire redacted portion of defendant's statement.
>
> I have instructed counsel to remove pages 79 through 80 of the transcript so that the transcript is now consistent with the videotaped statement.

We accord "trial courts deference in exercising control over matters pertaining to the jury," and review a trial court's decision not to remove a juror for abuse of discretion. R.D., 169 N.J. at 559-60. "Application of that standard respects the trial court's unique perspective." Id. at 559.

Here, the exposure to the unredacted material was minimal and fleeting in nature, and did not warrant removing the juror. There is no evidence the juror discussed the unredacted material with any other jurors. Therefore, it was not necessary to individually voir dire the other jurors. See id. at 560-61. Accordingly, we conclude the trial court did not abuse its discretion.

## VII.

Lastly, defendant contends his sentence is improper and excessive. First, he argues his sentence for counts two and eleven should be concurrent rather than consecutive since the crimes involved a single victim and the time interval of the incidents is unclear. Second, he argues the court erred in applying aggravating factors one and two, contending the consideration of the victim's age was double counting since the age of the victim was an element of the offenses. Third, he argues the sentencing court abused its discretion by allowing statements from individuals at the sentencing hearing on matters outside the scope of the indicted offenses and evidence presented at trial. Finally, he argues

resentencing is appropriate because of the disparity with the ten-year sentence received by his wife. We are unpersuaded by these arguments.

"Appellate review of sentencing is deferential, and appellate courts are cautioned not to substitute their judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014) (citation omitted). A sentence must be affirmed unless: (1) the trial court failed to follow the sentencing guidelines, (2) the aggravating and mitigating factors found by the trial court are not supported by substantial evidence in the record, or (3) the application of the guidelines "makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984); see also State v. Cassidy, 198 N.J. 165, 180-81 (2009). None of those failings occurred here.

We find no merit in defendant's argument that the trial court did not properly apply the aggravating and mitigating factors. In our review of the record, we are satisfied the trial judge adequately considered, weighed, and applied the relevant factors in sentencing defendant. Roth, 95 N.J. at 365-66.

Aggravating factor one requires consideration of "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner[.]" N.J.S.A. 2C:44-1(a)(1). Under aggravating factor one, "the sentencing court

reviews the severity of the defendant's crime, the single most important factor in the sentencing process, assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609 (2013) (citations omitted). In that analysis, "courts applying aggravating factor one focus on the gravity of the defendant's conduct, considering both the impact on its immediate victim and the overall circumstances surrounding the criminal event." Id. at 609-10.

Here, the record amply supports the court's finding of aggravating factor one based on the particularly heinous, cruel, and depraved manner in which the crimes were repeatedly committed against the defendant's son over a twenty-month period, and the gravity of the impact on the victim. We are satisfied the court's application of aggravating factor one was appropriate, as it did not double-count an element of the charged crime, and was supported by the court's express findings as placed on the record. See State v. Fuentes, 217 N.J. 57, 74-75 (2014).

Aggravating factor two focuses on the gravity of the harm and its impact on the victim of the crime, "with particular attention to the factors that rendered the victim vulnerable." Lawless, 214 N.J. at 611. The gravity and seriousness of the psychological harm Jason suffered at the hands of defendant was itself

sufficient to justify application of aggravating factor two. See State v. Logan, 262 N.J. Super. 128, 132-33 (App. Div. 1993) (holding that psychological harm justified the application of aggravating factor two when sentencing a defendant convicted of sexual assault, aggravated sexual assault, and endangering the welfare of a child).

Defendant argues it was error to impose consecutive sentences. The criteria for determining consecutive sentencing is set forth in Yarbough, 100 N.J. at 643-44. The Yarbough criteria include: whether "the crimes and their objectives were predominately independent of each other," whether "the crimes involved separate acts of violence or threats of violence," whether "the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior," whether "any of the crimes involved multiple victims," and whether "the convictions for which the sentences are to be imposed are numerous." Id. at 644. The trial judge considered and applied these factors. Additionally, the consecutive terms "would typically not exceed in aggregate duration, except for an habitual offender, the longest term for the two most serious offenses." Id. at 646. Here, the aggregate thirty-nine-year sentence did not exceed the longest term for the two aggravated sexual assaults. When a sentencing court properly

evaluates the <u>Yarbough</u> factors in light of the record, the court's decision will not normally be disturbed on appeal." <u>State v. Miller</u>, 205 N.J. 109, 129 (2011).

In sum, our careful review of the record convinces us "the aggregate sentence is fully warranted in light of the evidence of defendant's protracted sexual abuse of the young victim." <u>Logan</u>, 262 N.J. Super. at 132-33. "[T]here can be no free crimes in a system for which the punishment shall fit the crime." <u>Yarbough</u>, 100 N.J. at 643. The sentence imposed was manifestly appropriate and does not shock our judicial conscience. Defendant's remaining arguments regarding his sentence lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0667-16T4