719 A.2d 1276 (1998)
316 N.J. Super. 181
STATE of New Jersey, Plaintiff-Respondent,
v.
Paul COLLIER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 6, 1998.
Decided December 1, 1998.
*1277 Ivelisse Torres, Public Defender, for defendant-appellant (Mark H. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).
Daniel G. Giaquinto, Mercer County Prosecutor, for plaintiff-respondent (Charles Ouslander, Assistant Prosecutor, of counsel and on the brief).
Before Judges PRESSLER, BROCHIN and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
The important issue raised by this case is whether a trial judge, in admitting other-crimes evidence pursuant to N.J.R.E. 404(b), has the obligation, in order to avoid undue prejudice to the defendant, to limit the scope of that evidence to those facts necessary to prove the proposition for which it is offered. We hold that where the other-crimes evidence is otherwise admissible but involves inflammatory and other unduly prejudicial facts, the judge is obliged to require the evidence to be sanitized to the extent necessary to accommodate both the State's right to establish a fact in issue and the defendant's right to a fair trial. The context in which the issue arises here is a prosecution for robbery and attempted murder in which the State sought to prove that defendant's motive was retaliation for the victim's having implicated him in the burning death of a dog belonging to the victim's cousin. We are satisfied that while some evidence of the episode was admissible to prove motive, the gruesome details surrounding the dog's death should not have been admitted since they were unnecessary to establish motive and were unduly prejudicial to defendant in terms of the crimes for which he was *1278 standing trial. Accordingly, we reverse and remand for a new trial.
Following a trial by jury defendant Paul Collier was found guilty of first-degree robbery of Keeon Burke (N.J.S.A. 2C:15-1) (count 1); third-degree attempted theft from Keeon Burke (N.J.S.A. 2C:20-3(a) and N.J.S.A. 2C:5-1) (count 2); first-degree attempted murder of Keeon Burke (N.J.S.A. 2C:11-3 and N.J.S.A. 2C:5-1) (count 3); second-degree aggravated assault (N.J.S.A. 2C:12-1(b)(1)) (count 4); fourth-degree aggravated assault by knowingly under circumstances manifesting extreme indifference to the value of human life pointing a firearm, a handgun, at or in the direction of Keeon Burke (N.J.S.A. 2C:12-1(b)(4)) (count 5); and second-degree possession of a handgun for an unlawful purpose (N.J.S.A. 2C:39-4(a)) (count 7).[1]
At sentence the trial judge merged count 4 into count 1 and counts 2, 5, and 7 into count 3 and imposed two concurrent twenty-year terms of imprisonment with ten years to be served without parole.[2]
In this appeal defendant raises the following issues:
POINT I DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL JUDGE ALLOWED THE PROSECUTOR TO ADDUCE EVIDENCE AND THEN COMMENT IN SUMMATION ON IRRELEVANT AND PREJUDICIAL INFORMATION THAT KEEON AND KEVIN BURKE "LAID LOW" AFTER THE DOG BURNING EPISODE BECAUSE "WORD ON THE STREET WAS THAT" DEFENDANT AND LANE WERE "LOOKING FOR THEM." (Partially Raised Below).
POINT II THE TRIAL JUDGE ERRED IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF DEFENDANT'S ALLEGED INVOLVEMENT IN THE BURNING OF A PIT BULL ON A PRIOR OCCASION IN VIOLATION OF N.J.R.E. 404(b) AND 403 AND IN GIVING AN INADEQUATELIMITING INSTRUCTION REGARDING THIS EVIDENCE. (Partially Raised Below).
POINT III DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE.
We agree with the argument raised by defendant in Point I and also conclude that the evidence admitted under N.J.R.E. 404(b) should have been sanitized. We reverse and remand for a new trial. Accordingly, we do not address defendant's sentence in this appeal.
On June 26, 1995, the victim Keeon Burke, his cousin Kenneth Burke, and Darnell Thomas were walking their pit bull dogs. They entered an alleyway on Hermitage Avenue in Trenton. Kenneth and Darnell released their dogs from their leashes so that they could play. The victim did not release his dog. The two loose dogs ran up the alley and began growling at each other. Kenneth and Darnell ran to grab the dogs, but Darnell's dog, Satan, locked on to Kenneth's dog's face and then on to his testicles. Kenneth and Darnell grabbed sticks and separated the dogs. However, Kenneth's dog was injured and bloody from the fight. Kenneth decided he could not bring the dog home in that condition because his mother would not approve of what had taken place. Kenneth asked a number of persons to take the dog but they all declined. Kenneth and Darnell then walked the dog back to Stuyvesant Avenue and stayed there for approximately five minutes. The victim had gone to tie his dog up. Kenneth continued to ask people to take his dog. Defendant and his brother Tabika Dawson approached Kenneth and asked for the dog. Kenneth gave them the dog because he felt that defendant would care for it since defendant had pit bulls of his own. Defendant and Dawson took the dog and *1279 walked up Christopher Avenue in the direction of the train tracks.
About ten minutes later, while Kenneth was sitting on his porch on Hermitage Avenue, a young boy came up to him and said that there was a dog burning on the tracks. Kenneth thought that it might be his dog since defendant and Dawson were walking towards the tracks with the dog when he last saw them. Kenneth went to the railroad tracks but did not see the dog. He subsequently found out that it was his dog that was burned. The police responded to a 911 emergency call and found the dog badly burned and mortally wounded. Neither the victim nor Kenneth were at the scene when the dog died and had no personal knowledge of who actually set fire to it.
Approximately one week later Kenneth heard from family members that the police were looking for him and the victim to speak to them regarding the dog-burning. Kenneth and the victim went to the police station and spoke separately with the detectives. Kenneth told the police that he gave the dog to defendant and Dawson, and provided a written statement to the police regarding the incident. While Kenneth was giving his statement to the police the victim was being held in a separate jail cell due to an outstanding traffic warrant. After Kenneth gave his statement the victim was moved upstairs to another cell which was next to a cell holding Dawson. Dawson asked the victim questions about what happened during the police interview. Dawson appeared concerned about what Kenneth was telling the police, and the victim attempted to reassure Dawson that Kenneth had said nothing. Ultimately Kenneth, the victim, defendant, Dawson, and Andre Lane were charged with the dog-burning incident.[3]
About three weeks later on the evening of July 18, 1995, the victim was walking with his girlfriend Coffee Watkins. Watkins thought she heard a noise coming from a cluster of bushes near the sidewalk. The couple stopped momentarily but the victim heard nothing and continued to walk. After the victim had taken several steps ahead of Watkins, two men wearing hooded sweatshirts and jeans came out of the bushes carrying handguns. According to the victim, one assailant wore a brown sweatshirt and black jeans and the other wore a black sweatshirt and blue jeans. The assailant with the brown sweatshirt had a chrome colored handgun which he placed to the back of the victim's head and demanded the victim's money. Although the assailant made some effort to disguise his voice, the victim recognized his voice as that of defendant whom he had known since he was nine years old and had had contact with on an almost daily basis since that time. The victim thought the assailant was joking and pushed the gun away from his head several times, tried to continue walking, and told the assailants to stop joking.
The other assailant had a black handgun which he also placed to the victim's head. When the victim told each to stop playing with him, the second assailant told the victim that they were not playing and began patting the victim's pockets pulling something out of the victim's pocket. When the victim turned to look at this assailant defendant shot the victim in the right side of the head. The police who were dispatched to the scene, immediately called for emergency medical assistance. The victim was transported to Cadwalader Park for air-lifting to Cooper Medical Center in Camden for treatment. While he was waiting to be air-lifted, he told the police that defendant and Andre Lane were the persons who had robbed and shot him. The next day, in the hospital, the victim made a photographic identification of defendant and Lane. At the time of trial parts of the bullet still remained in the victim's head, he suffered from occasional seizures, convulsions, and severe migraine headaches, and the vision in his left eye was impaired.
Prior to trial the State made known its intention to seek to introduce evidence regarding the dog-burning incident in an effort to establish revenge or "street justice" as the motive for the robbery and shooting of the victim. The State argued that an inference could be drawn that defendant thought Kenneth *1280 and the victim had implicated him in the dog-burning incident because defendant knew that Kenneth and the victim had gone to the police station together and given statements, and that shortly thereafter they, along with defendant and Dawson, were charged with offenses arising out of the incident. Accordingly, immediately prior to trial the judge conducted a hearing pursuant to N.J.R.E. 104(a) to determine if the evidence was admissible under N.J.R.E. 404(b) and, if it was admissible, whether it should nevertheless be excluded under N.J.R.E. 403. The trial judge determined that the evidence was admissible to prove a motive for defendant to have shot and robbed the victim. The judge recognized the extreme prejudice to defendant in light of the nature of the dog-burning incident but found that its probative value was not outweighed by its potential prejudice. The trial judge, therefore, ruled the evidence to be admissible, particularly since there was no other evidence of motive that would be less prejudicial.
As evidence of the dog-burning incident, the State offered the testimony of Patrolman Anthony Pasqua, who testified that he responded to a radio call given to the canine officer of the Trenton Police Department regarding a report of a group of males setting fire to a dog. Since the canine officer acts as a one-man unit, Pasqua proceeded to the location to assist him since the call indicated more than one person was involved. Pasqua searched the area and found a pit bull dog lying on its left side that appeared to be burned on its right side from about its rib cage down to its tail. He further testified that it was bleeding from several areas and had lacerations to its anal and genital areas. Pasqua said the dog's tongue was hanging out of its mouth and it was partly severed and bleeding. He further testified that the anal area was "torn up." He further asserted that the dog was smoking as if the fire had "just went out." The dog was still alive. The dog was also bleeding from the facial area and had other little scratches and cuts. The dog died while Pasqua was waiting for the animal control officer. Pasqua was able to locate the 911 caller, and he testified that the caller told him that the persons surrounding the dog had poured lighter fluid on it and had thrown a match setting the dog on fire. Finally, he testified that the 911 caller turned away because she was unable to watch the incident.
After Pasqua was excused, a short recess was taken. Immediately thereafter the trial judge gave the following limiting instruction to the jury:
Ok. Before we get started again, there is a brief, what is called a limiting instruction. That just means that you heard a bit of evidence, and I'm going to tell you under what circumstances you can use that evidence.
You just heard testimony concerning the cruelty to animals that we had talked about, the dog burning. Defendant is not charged with the incident. It's necessary at this time that I remind you of that.
* * * * *
I need, just for clarification purposes, to say the defendant is not charged here with that incident. That is not of your concern. Whether he's charged with that or not in another court is of no concern to you. He is not charged here with that incident.
There is a court rule that governs under any circumstances other prior wrongs or acts may be considered by a jury. It states as follows: Other crimes, wrongs or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.
The evidence of the dog incident was introduced for the sole purpose here of establishing a motive on defendant's part. Motive evidence is defined as that which discloses why a person may have committed a criminal offense. So that is the sole purpose for which it is being admitted, not to show that he did this, or may have done this, so he probably did something else. It is not to be considered for that purpose.

*1281 You may not conclude that simply because he may have committed a wrong on another occasion, that he committed the offenses that are charged in this indictment. You may, however, consider this evidence solely for the purpose, motive which I have explained in conjunction with all the other evidence as to defendant's guilt or innocence.
It's necessary under the Rules of Court that I explain that to you now, and that will be relevant case law, [sic] and I will explain it again, remind you at the end of the trial. and with that said, we will proceed with the next witness.
That limiting instruction was essentially repeated during the judge's final charge.
We first consider defendant's contention that the trial judge erred in permitting the State to introduce evidence regarding defendant's alleged involvement in the death of the dog and failing to give an adequate limiting instruction regarding the use of this evidence. Although we disagree with those contentions we conclude that the evidence should have been sanitized to minimize its prejudicial impact upon defendant since he was not on trial for that offense.
Evidence of other crimes, wrongs, or acts are not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. N.J.R.E. 404(b). However, such evidence may be admitted for other purposes, such as proof of motive when motive is relevant to a material issue in dispute. Ibid. N.J.R.E. 404(b) makes clear that other-crime or other-wrong evidence is only admissible if relevant to prove some other fact that is genuinely in issue. State v. Marrero, 148 N.J. 469, 482, 691 A.2d 293 (1997). Evidence is relevant if it has a tendency in reason to prove or disprove any fact of consequence to the determination of the action. N.J.R.E. 401.
Although relevant, evidence may still be excluded if its probative value is substantially outweighed by the risk of undue prejudice. N.J.R.E. 403. In determining whether to admit evidence pursuant to N.J.R.E. 404(b) a court must always engage in an analysis pursuant to N.J.R.E. 403. State v. Cofield, 127 N.J. 328, 336, 605 A.2d 230 (1992). The evidence must be material to a fact genuinely in dispute. State v. Stevens, 115 N.J. 289, 301-02, 558 A.2d 833 (1989). Given the damaging nature of other-crime or other-wrong evidence, a court should consider whether its proffered use in the case can adequately be served by other evidence. State v. Marrero, supra, 148 N.J. at 482, 691 A.2d 293; State v. Stevens, supra, 115 N.J. at 301, 558 A.2d 833. The evidence must be offered for a proper purpose, must be relevant, must have probative value that is not substantially outweighed by the danger of unfair prejudice to defendant, and must be coupled with a limiting instruction. State v. Cofield, supra, 127 N.J. at 334, 605 A.2d 230. The party seeking the admission of other-crimes or other-wrongs evidence must be able to establish the following:
(1) The evidence of the other crime must be admissible as relevant to a material issue;
(2) It must be similar in kind and reasonably close in time to the offense charged;
(3) The evidence of the other crime must be clear and convincing; and
(4) The probative value of the evidence must not be outweighed by its apparent prejudice.

[Id. at 338, 605 A.2d 230.]
Nevertheless, the burden of convincing the court that the evidence offered pursuant to N.J.R.E. 404(b) should be excluded because its probative value is substantially outweighed by the risk of undue prejudice is on the party urging exclusion of the evidence. State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982). That party must show that the probative value "is so substantially outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation" of the basic issues of the case. State v. Thompson, 59 N.J. 396, 421, 283 A.2d 513 (1971). Moreover, since the trial judge has the feel of the case, he or she has broad discretion to determine whether evidence, otherwise relevant, should be excluded under Rule 403, and it is only where there has been a clear abuse of discretion that the trial judge's decision should be disturbed *1282 on appeal. State v. Marrero, supra, 148 N.J. at 483, 691 A.2d 293. On appellate review, the decision of the trial court must stand unless it can be shown that it palpably abused its discretion, that is, that the finding was so wide of the mark that a manifest denial of justice resulted. State v. Carter, supra, 91 N.J. at 106, 449 A.2d 1280.
Applying these principles to the facts of this case we conclude that the trial judge did not abuse her discretion in allowing the State to introduce evidence regarding the dog-burning incident. The evidence was relevant to prove defendant's motive for robbing and shooting the victim whom he had known for a number of years and with whom his relations had always been friendly. The State needed to show why defendant would rob and shoot his friend intending to kill him. The State's theory was that retaliation or revenge for the victim having implicated defendant in the dog-burning incident provided such a motive. We reject defendant's contention that the evidence tended to show that Kenneth rather than the victim implicated defendant in the dog-burning incident. The victim and his cousin Kenneth both went to the police station together and spoke to the police. Defendant could reasonably have believed that both Kenneth and the victim were responsible for providing the police with information implicating him in the burning of the dog. Accordingly, the evidence was relevant to prove motive. Thus, the first Cofield requirement was satisfied.
The dog-burning incident took place on June 26, 1995. The robbery and shooting of the victim took place on July 18, 1995, twenty-three days later. Without question, the dog-burning was reasonably close in time to the robbery. When motive, rather than pattern, is sought to be shown through other-crime evidence, we are of the view that similarity between the alleged other act and the one for which defendant is currently on trial is not a requirement for admissibility. See State v. Nance, 148 N.J. 376, 389-90, 689 A.2d 1351 (1997); Biunno Current N.J. Rules of Evidence, Comment 8 on N.J.R.E. 404 (1998). The second Cofield factor was also thus satisfied.
Nor can we find that the trial judge abused her discretion when finding that the evidence of defendant's involvement in the dog-burning incident was clear and convincing. The trial judge was not required to find by clear and convincing evidence that defendant actually was involved in the dog-burning incident. The mere fact that defendant was charged, presumably as a result of information given by the victim, was sufficient to supply the motive. The evidence regarding defendant's belief that he was implicated by the victim and Kenneth was clear and convincing. Thus the third Cofield factor was satisfied.
As to the factor of undue prejudice, the fourth Cofield factor, the trial judge carefully considered whether N.J.R.E. 403 required exclusion of the evidence. The trial judge observed that other than a crime committed against a child, there are very few factual patterns that would produce as extreme an emotional response in the minds of the jurors as the animal abuse here involved. Nevertheless, the trial judge, although recognizing the extent of the prejudice, concluded that there was no other evidence or motive available. She thus held that the evidence should not be excluded under N.J.R.E. 403. We cannot say that the trial judge mistakenly exercised her discretion in concluding that the dog-burning episode was admissible to prove motive, see State v. Marrero, supra, 148 N.J. at 483, 691 A.2d 293; State v. Carter, supra, 91 N.J. at 106, 449 A.2d 1280. We are, however, satisfied that its great potential for prejudice required the judge to confine its admissibility to those facts reasonably necessary for that probative purpose, that is, to sanitize it.
The specific details of all the injuries suffered by the dog, some or all of which may have been sustained in the fight with the other dog, coupled with the evidence of gasoline being thrown on the dog, and the facts of the burning of the dog were unnecessary to establish defendant's motive to rob and shoot the victim. It should have been presented to the jury in a more neutral fashion with much less detail. Although we agree with the State that it was entitled to show that the offense was serious enough to provide sufficient *1283 motive to rob and shoot the victim, too much detail was elicited.
We conclude that a trial judge, in admitting other-crimes evidence that is inherently inflammatory must take appropriate steps to reduce the inherent prejudice of that evidence by considering whether it can reasonably be presented to the jury in a less prejudicial form, and, when necessary, requiring the evidence to be presented to the jury in a sanitized form. That sanitizing accommodates the right of the proponent to present relevant evidence and the right of the objecting party to avoid undue prejudice. Presenting the evidence to the jury in a sanitized form would have been sufficient here to satisfy the State's need to establish motive without compromising defendant's paramount right to a fair trial. Presenting the evidence in a sanitized form would have properly protected the interest of the State in proving motive while minimizing the prejudice to defendant. Although the evidence of defendant's guilt here was strong, we cannot conclude that the failure to sanitize the evidence did not lead the jury to a result it otherwise would not have reached. Stated another way, we are not confident that the error was not clearly capable of producing an unjust result. See R. 2:10-2; State v. Macon, 57 N.J. 325, 326, 273 A.2d 1 (1971).
We thus conclude that while the trial judge did not mistakenly exercise her discretion in ruling that in principle the other-crimes evidence was admissible, she erred in admitting it to the extent she did. On retrial we direct that counsel first confer in an attempt to agree as to what should be presented to the jury to satisfy the State's need to present a motive and still protect defendant's right to a fair trial. In the event the parties are unable to agree, the trial judge must conduct a Rule 104(a) hearing and, after balancing the State's probative needs against the resultant undue prejudice to the defendant, appropriately sanitize the evidence to assure that the rights of both the State and defendant are protected.
This holding is consistent with the views we expressed in State v. Hardaway, 269 N.J.Super. 627, 636 A.2d 128 (App.Div.1994), when we reversed defendant's conviction for aggravated manslaughter and related weapons offenses due to the failure of the trial judge to minimize the impact of inherently prejudicial evidence to that which was necessary to satisfy the purpose for which it was introduced. In Hardaway, supra, in order to establish that three weeks after the fatal shooting defendant possessed the handgun that was used to kill the victim, the State produced the testimony of two robbery victims. Each identified defendant as having committed an armed robbery upon them and described in detail how defendant committed the crime, including the fear they felt when defendant put the handgun to their heads. Id. at 630, 636 A.2d 128. They also identified the handgun. The robbery took place at a night club and was reported, while in progress, to an Essex County Constable who was providing security at the club. The constable ran outside to the parking lot, saw defendant, grabbed him, and threw him to the ground. He testified that after he handcuffed defendant he rolled him over and found a handgun in his waistband. We concluded that although the evidence was relevant to prove that defendant was at the scene of the homicide, the trial judge, in the course of the weighing process to determine its admissibility, should have, on his own initiative, determined the scope and content of the proffered evidence. Since the State offered the evidence only to prove that less than three weeks after the homicide defendant possessed the handgun that was used to kill his victim, that fact could have been proved by the Constable's testimony alone without displaying the robbery victims to the jury and having them describe the terror of the armed robbery. Ibid. See also State v. Lumumba, 253 N.J.Super. 375, 390-91, 601 A.2d 1178 (App.Div.1992) (evidence placing defendant and a co-defendant together and connecting them with a car on August 25, two days after the murder for which defendant was on trial, could have been admitted without the wholesale proof of the facts of the incident of August 25, which included a charge of attempted murder).
We note that defendant also complains about the judge's limiting instruction. Considered as a whole, the trial judge's limiting *1284 instruction and jury charge clearly and unambiguously explained the limited relevance of the other-crime evidence, specifically advised the jury of the limited purpose for which the evidence could be used, and advised the jury as to the purpose for which the evidence could not be used, including an admonition that the other-crime evidence could not be used to prove defendant's general predisposition to commit the offenses with which he was charged. The limiting instructions were appropriate. See State v. Stevens, supra, 115 N.J. at 309, 558 A.2d 833. The problem here was not, however, with the limiting instruction properly given both after the other-crimes evidence was admitted and in the final charge. The problem, rather, was that the other-crimes evidence, as admitted, was too prejudicial to be subject to cure by any limiting instruction.
We next consider defendant's contention that he was denied a fair trial because the prosecutor introduced evidence and then commented on summation that the victim and Kenneth "laid low" after the dog-burning incident because "word on the street was that" defendant and Lane were "looking for them." The subject first came up during the Rule 104(a) hearing regarding the admissibility of the dog-burning incident. The following exchange occurred during the testimony of Kenneth:
Q. Ok. About ten days, eleven days after that, your cousin, Keeon Burke, got shot in the back of the head; do you remember that?
A. Yes.
Q. Between the time that you guys got out on bail for the dog-burning incident, and the time that Keeon got shot, had you heard anything or were you told anything or were there any rumors going around that Paul Collier and Tabika or Andre Lane were looking for you?
A. Yes.
Defense counsel: I have to object to that, your honor. That's hearsay.
The court: OK, it is hearsay.
Assistant Prosecutor: OK.
Q. Between the time that you got out on bail and the time that your cousin Keeon got shot, during that time, were you afraid at all of Paul Collier and Tabika and/or Andre Lane?
A. Yes.
Q. And why were you afraid?
A. Because I told who I gave the dog to.
Q. Because you spoke to the police?
A. Yes.
Q. Was Keeon afraid, too?
A. Yes.
Although the trial judge remarked that the testimony was hearsay the assistant prosecutor, nevertheless, in front of the jury, engaged in the following examination of Kenneth:
Q. Between the time that you gave that statement to the police and the time that Keeon got shot, what were you guys doing?
A. We were staying low.
Q. Staying low?
A. Yes.
Q. Why?
A. We found out they was looking for us.
Q. Why?
A. Because I gave them a statement.
Q. Gave the police a statement?
A. Yes.
Q. So you guys were laying low?
A. Yes.
Q. Were you afraid?
A. Yes.
Q. Of Tabika and of [defendant]?
A. Yes.
There was no objection.
Thereafter, during the direct examination of the victim, the following occurred:
Q. During the time between the time that you got out of jail and the time that you got shot, did you become worried or concerned or afraid about [defendant]?
A. I became afraid about all of them because I received word from several close friends to the family that they had came looking.
Defense counsel: I will object.
*1285 The court: You can't tell us what anybody else said.
The witness: All right.
Q. Were you afraid? Did you become afraid?
A. Yes.
Q. You said all of them. Are you talking about Tabika?
A. No.
Q. Why not?
A. Because he was locked up still.
Q. Who were you afraid of?
A. I was afraid of [defendant], Andre Lane and several of his brothers.
Moreover, on summation the prosecutor argued that the word on the street was that defendant and Lane were looking for the victim and Kenneth, so the victim and Kenneth laid low. She further remarked that unfortunately for the victim he didn't lay low enough. The evidence regarding the victim's fear of defendant was inadmissible, and the remark by the prosecutor, though fleeting, was improper. The evidence elicited was hearsay. Its prejudicial implication was that defendant had formed a retaliatory intention. To the extent the evidence was offered to show the victim's state of mind based upon what he heard on the street, it was also inadmissible because it was immaterial. The obvious danger was that the jury would consider evidence that might be no more than unsubstantiated rumor. At retrial the State shall not seek to introduce this evidence.
We conclude that the error in failing to sanitize the evidence regarding the dog-burning incident, compounded by allowing the State to introduce hearsay evidence of street rumors, deprived defendant of a fair trial. We reverse and remand for a new trial. In light of this conclusion we deem it unnecessary to comment upon the sentence imposed.
Reversed and remanded.
NOTES
[1] Immediately prior to trial the State dismissed the charge set forth against defendant in count 8 as well as all charges against the co-defendant Andre Lane. Only Lane was charged in count 6.
[2] We also note that the trial judge imposed $50 penalties in favor of the Victims of Crime Compensation Board. Since these were crimes of violence the minimum penalty should have been $100. See N.J.S.A. 2C:43-3.1(a)(1).
[3] Lane is the co-defendant against whom the charges were dismissed prior to trial.