**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1148-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

MICHAEL OWENS, a/k/a
MICHAEL WENS and
MICHAEL R. OWENS,

      Defendant-Appellant.

_____

<div style="border:1px solid black">

**APPROVED FOR PUBLICATION
AS REDACTED**

**January 6, 2026**

**APPELLATE DIVISION**

</div>

Argued April 8, 2024 – Decided June 12, 2024[1]

Before Judges Gilson, DeAlmeida, and Jacobs (Judge Gilson dissenting).

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 21-07-0466.

Kevin Scott Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Kevin Scott Finckenauer, of counsel and on the briefs).

---

[1] We are now publishing most of an opinion, including the dissent, which we previously issued as an unpublished opinion. The published version omits our analysis of several issues raised by defendant, which were discussed in Part II, sections C and D of the unpublished majority opinion, and Part II, sections B, C, and D of the dissent. We have not included those sections because we do not think those issues need to be included in a published opinion. See R. 1:36-3. We have also made minor edits and revisions to the published opinion.

Matthew S. Samel, Assistant Prosecutor, argued the cause for respondent (Angelo J. Onofri, Mercer County Prosecutor, attorney; Matthew S. Samel, of counsel and on the brief).

The opinion of the court was delivered by

JACOBS, J.A.D.

Defendant Michael Owens appeals his August 2022 conviction and sentence for the first-degree murder of Luis Gonzalez and related charges. We vacate defendant's first-degree murder conviction, as well as his conviction for second-degree possession of a firearm for an unlawful purpose. We also reverse defendant's conviction for fourth-degree theft. We affirm his convictions of second-degree unlawful possession of a handgun without a permit and third-degree aggravated assault.

## I.

On the evening of July 17, 2020, Hamilton Township police officers responded to a report of domestic violence between defendant and his girlfriend, M.L.[2] The incident was sparked by defendant's discovery that another man had telephoned her. Enraged by this contact, defendant grabbed M.L. by the throat

---

[2] We use initials to protect the identity of M.L. as a victim of domestic violence. R. 1:38-3(c)(12).

and began to choke her. M.L. escaped defendant's grip, but immediately afterward defendant snatched her cell phone and car keys and drove off in M.L.'s black Chevrolet Malibu.

With defendant's departure, M.L. went to a neighbor's house and asked them to call the police. While there, M.L. called a man named Luis Gonzalez. M.L. regularly bought heroin from Gonzalez for personal use and resale. Evidence at trial showed that defendant obtained Gonzalez's contact information from M.L.'s cell phone that very day. The State theorized defendant learned of Gonzalez's whereabouts in this manner.

Within approximately forty-five minutes of the domestic violence incident between M.L. and defendant in Hamilton, Trenton police officers responded to a report of gunshots at an address approximately one mile away. Upon arrival, police found Gonzalez's body lying in the middle of the street outside of his home. Police and emergency medical personnel rendered aid on scene. Gonzalez was transported to a local hospital. Shortly after arrival, he was pronounced dead. An autopsy determined the cause of death as two gunshot wounds to the torso.

In the investigation that ensued, police learned from Gonzalez's brother that Gonzalez had been speaking angrily on the phone just before he was shot.

A-1148-22

GPS location and cell phone data tracked M.L.'s phone to the immediate vicinity of the homicide at the time of shooting.[3] Police also secured surveillance video from various locations in the area. From this footage, they identified M.L.'s black Chevrolet Malibu at the scene of the shooting. Surveillance video showed the fatal shots were fired from that vehicle. Present in the car was an individual matching defendant's description. In addition, text messages obtained via warrant evidenced drug sales between M.L. and Gonzalez. The messages between M.L. and defendant included ones from defendant upset with M.L's heroin use. Based on this evidence, a warrant was issued for defendant's arrest.

In July 2021, a Mercer County grand jury returned an indictment for (1) first-degree murder, N.J.S.A. 2C:11-3(a)(1); (2) second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); (3) second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); (4) third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(13); (5) fourth-degree theft by unlawful taking (M.L.'s cell phone), N.J.S.A. 2C:20-3(a); and (6) second-degree certain person not to have a weapon, N.J.S.A. 2C:39-7(b)(1).

_____

[3] The day following the shooting, M.L. found her phone on a couch within an apartment she shared with defendant and their minor son.

Before trial, defense counsel made an application to sever the theft and aggravated assault charges. Following a N.J.R.E. 404(b) hearing and application of the Cofield[4] factors, the trial court denied defendant's application.

Trial was conducted between July 19, 2022 and August 23, 2022. Defendant elected to proceed with an identification defense. That defense failed.

Following convictions on the first five counts, the State dismissed count six, charging second-degree certain person not to possess a firearm, N.J.S.A. 2C:39-7(b)(1). Defendant was sentenced to an aggregate term of forty-five years with a parole disqualifier of eighty-five percent pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

II.

Defendant raises the following points on appeal:

POINT I

> THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON PASSION/PROVOCATION MANSLAUGHTER AS A LESSER-INCLUDED OFFENSE OF MURDER BECAUSE THE STATE'S ENTIRE THEORY OF THE CASE WAS THAT MR. OWENS KILLED LUIS GONZALEZ IN A RAGE OVER GONZALEZ

---

[4] State v. Cofield, 127 N.J. 328, 338 (1992).

CONTACTING HIS ROMANTIC PARTNER, [M.L.].
(NOT RAISED BELOW).

POINT II

THE TRIAL COURT ERRED IN FAILING TO
SEVER THE DOMESTIC VIOLENCE
AGGRAVATED ASSAULT FROM THE HOMICIDE
OFFENSES.[5]

We address defendant's arguments in turn.

A.  Jury Instruction on Passion/Provocation Manslaughter.

Defendant argues the evidence presented at trial clearly indicated passion/provocation manslaughter, a lesser-included offense to murder.  He contends the trial court was obligated to sua sponte instruct the jury on this lesser-included offense despite his counsel's failure to request the instruction below.  We agree.

It is well-settled that "[a]ccurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial."  State v. Concepcion, 111 N.J. 373, 379 (1988).  However, "[i]f the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case."  State v.

---

[5]  In accordance with Rule 1:36-3, the published version of this opinion omits discussion of the stipulation, theft charge, and the sentence discussed in the unpublished version in Part II, Sections C and D of the majority opinion.

Singleton, 211 N.J. 157, 182 (2012) (citing State v. Macon, 57 N.J. 325, 333-34 (1971)).

Therefore, "the failure to object to a jury instruction requires review under the plain error standard." State v. Wakefield, 190 N.J. 397, 473 (2007) (citing State v. Bunch, 180 N.J. 534, 541 (2004)). The plain error standard involves a two-fold determination: "(1) whether there was error; and (2) whether that error was 'clearly capable of producing an unjust result,' R. 2:10-2; that is, whether there is 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Dunbrack, 245 N.J. 531, 544 (2021) (quoting State v. Funderburg, 225 N.J. 66, 79 (2016)) (omission in original). "If both conditions are met, reversal is warranted." Ibid.; see also State v. Walker, 203 N.J. 73, 89 (2010).

"A trial court's determination of whether to include a charge to a lesser[-]included offense is governed by statute." Dunbrack, 245 N.J. at 544. Under N.J.S.A. 2C:1-8(e), "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Ibid. (alteration in original). If, as here, the defendant "did not request a charge or did not object to the omission of a charge to a lesser[-]included offense," the appellate court does not review the record to

7

determine whether a rational basis existed.  Id. at 545.  Rather, it assesses "whether the record 'clearly indicated' the charge, such that the trial court was obligated to give it sua sponte."  Ibid. (quoting State v. Denofa, 187 N.J. 24, 41-42 (2006)).  In other words, "[a]n unrequested charge on a lesser-included offense must be given only where the facts in evidence 'clearly indicate' the appropriateness of that charge."  State v. Savage, 172 N.J. 374, 397 (2002) (citing State v. Choice, 98 N.J. 295, 298 (1985)).

"[A] trial court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense."  State v. Jenkins, 178 N.J. 347, 361 (citing State v. Garron, 177 N.J. 147, 180 (2003)).  However, "when the defendant fails to ask for a charge on lesser-included offenses, the court is not obliged to sift meticulously through the record in search of any combination of facts supporting a lesser-included charge."  Denofa, 187 N.J. at 42 (citing State v. Sloane, 111 N.J. 293, 303 (1988)).  Thus, even if neither the State nor defendant requests the trial judge to instruct the jury on a lesser-included offense, "the court must sua sponte provide [such] an instruction" when appropriate.  State v. Maloney, 216 N.J. 91, 107 (2013) (internal citations

omitted).  Ultimately, "the need for the charge must 'jump off' the proverbial page."  State v. R.T., 205 N.J. 493, 510 (2011) (quoting Denofa, 187 N.J. at 42).

"Passion/provocation manslaughter is an intentional homicide committed under extenuating circumstances that mitigate the murder."  State v. Robinson, 136 N.J. 476, 481 (1994).  A criminal homicide may be considered manslaughter when "[a] homicide which would otherwise be murder under [section] 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation."  N.J.S.A. 2C:11-4(b)(2).  "Thus, passion/provocation manslaughter is considered a lesser-included offense of murder: the offense contains all the elements of murder except that the presence of reasonable provocation, coupled with defendant's impassioned actions, establish a lesser culpability."  Robinson, 136 N.J. at 482; see also N.J.S.A. 2C:1-8(d)(3).

> In our jurisprudence, attempted passion/provocation manslaughter is comprised of four elements: [1] the provocation must be adequate; [2] the defendant must not have had time to cool off between the provocation and the slaying; [3] the provocation must have actually impassioned the defendant; and [4] the defendant must not have actually cooled off before the slaying.
>
> [Funderburg, 225 N.J. at 80 (quoting State v. Mauricio, 117 N.J. 402, 411 (1990)).]

The first two criteria are objective and the second two are subjective.  Mauricio, 117 N.J. at 411.

9

"In determining whether to instruct a jury on passion/provocation manslaughter, the trial judge must view the evidence in the light most favorable to defendant." State v. Viera, 346 N.J. Super. 198, 212 (App. Div. 2001) (citing Mauricio, 117 N.J. at 412). As the Supreme Court explained,

> a trial court in charging a jury sua sponte must find first that the two objective elements of passion/provocation manslaughter are clearly indicated by the evidence. If they are, the two subjective elements should "almost always be left for the jury." That standard is equally applicable to a trial court's decision to charge a jury sua sponte on attempted passion/provocation manslaughter.
>
> [Robinson, 136 N.J. at 491 (citing Mauricio, 117 N.J. at 413) (emphasis in original).]

The two objective elements are whether the provocation was adequate and whether there was time for the defendant to cool off before the homicide. The measure of adequate provocation is "whether loss of self-control is a reasonable reaction." Mauricio, 117 N.J. at 412. "The provocation must be sufficient to arouse the passions of an ordinary [person] beyond the power of his [or her] control." Robinson, 136 N.J. at 491 (quoting Mauricio, 117 N.J. at 412) (alterations in original) (internal quotation marks omitted). "The generally accepted rule is that words alone, no matter how offensive or insulting, do not constitute adequate provocation to reduce murder to manslaughter." Funderburg, 225 N.J. at 80 (quoting State v. Crisantos, 102 N.J 265, 274 (1986)).

A-1148-22

Notwithstanding these parameters, the Supreme Court has "acknowledge[d] and embrace[d] the 'trend away from the usual practice of placing the various types of provocatory conduct into pigeon-holes . . . .'" State v. Perry, 124 N.J. 128, 159 (1991) (internal citations omitted).

Concerning the cooling-off period, the Supreme Court has said "it is well-nigh impossible to set specific guidelines in temporal terms," therefore "[t]rial courts are . . . remitted to the sense of the situation as disclosed by the facts." Mauricio, 117 N.J. at 413. In Mauricio, where the defendant argued with a bar bouncer, left, and returned to commit a homicide within a duration of "anywhere from fifteen minutes to forty-five minutes (the issue was in dispute)," the Court observed:

> [n]or can we say that as a matter of law the time period between defendant's altercation with the bouncer and humiliation at being ejected and his shooting of the victim – something over half an hour – was such that no jury could rationally determine that a reasonable person's inflamed passions might not have cooled sufficiently to permit the return of self-control.
>
> [Id. at 415-16.]

Here, the evidence "clearly indicates" defendant learned of the dangerous nature of his girlfriend's relationship with the deceased, became impassioned, and committed a homicide within a forty-five-minute time frame. In opening

11

A-1148-22

arguments, the prosecutor amplified the significance of this newfound knowledge:

> Because about forty-five minutes before the murder, around 8:00 p.m. . . . the evidence will show that the defendant was going through [M.L.'s] phone. And when he was going through her phone[,] he became enraged about the contents of her phone.
>
> Now, before you understand the relationship between Michael Owens and Luis Gonzalez, first you need to understand the relationship between [M.L.], Michael Owens's girlfriend, and Luis Gonzalez. Put quite simply, Luis Gonzalez had been selling [M.L.] drugs. He had been selling her heroin.
>
> [(Emphasis added).]

In urging a finding of guilty during closing arguments, the prosecutor stressed defendant's anger at learning of the drug-based relationship between Gonzalez and M.L.

> The defendant [started] calling Luis Gonzalez immediately at 8:03 [p.m.] and then continuously six more times up until the murder. [M.L.] calling Luis Gonzalez from [a friend's] phone after she was just assaulted, Gonzalez being deleted, references to [M.L.'s] phone. And then after the fact[,] texting about dope, angry about it. Well[,] where did she get her dope? She got her heroin from Luis Gonzalez.
>
> [(Emphasis added).]

12

The lethal consequence of drug use, particularly heroin, is well known. The information defendant discovered and to which he swiftly reacted struck at the core of his romantic and familial relationship with M.L. and their minor child. Learning that M.L. was a heroin addict whose drugs were supplied by Gonzalez threatened the health of his romantic relationship and the continuance of their family structure. More abstractly, discovering the involvement of a loved one in drug use bears direct resemblance to a classic scenario, where one reacts violently to the surprise discovery of one's romantic partner in a sexual liaison. Determining that the impact of a discovery of this kind would provoke an impassioned reaction, as here, does not require a "meticulous[] . . . sift[ing] through the entire record[.]" Funderburg, 225 N.J. at 81 (quoting Choice, 98 N.J. at 299). Rather, the evidence "jump[s] off the page." Ibid. (quoting Denofa, 187 N.J. at 42).

In so ruling, we consider also the theory of prosecution in the context of this case. Here, the State's opening and closing arguments on the identification linked defendant's impassioned reaction to discovery of a drug-based relationship of his child's mother to the homicide that followed in short order. As a matter of fundamental fairness, because the State centered its prosecution on defendant's impassioned conduct, defendant is entitled to the jury's

13

consideration of that mental state in rendering its verdict. Under these circumstances, failing to administer the passion/provocation manslaughter instruction is "of such a nature to have been clearly capable of producing an unjust result." State v. Allen, 254 N.J. 530, 549 (2023) (quoting State v. Trinidad, 241 N.J. 425, 451 (2020)). The impact of this knowledge in these circumstances is adequate provocation to meet the first element of the passion/provocation test. Mauricio, 117 N.J. at 411.

In this regard, we differ with the dissent, which cites State v. Copling for holding "that there was insufficient provocation when the defendant killed the victim 'in retaliation' [upon] learning that the victim had attacked the defendant's younger brother the previous day." 326 N.J. Super. 417, 430-31 (App. Div. 1999). The court in Copling stressed that the defendant's conduct was retaliatory rather than legally provoked, because while defendant's brother was indeed attacked, "defendant learned that his brother was uninjured" before taking lethal action. Ibid. By contrast, the State here emphasized that drug sales to M.L. in fact occurred. The resultant harm to M.L. and the family structure is a given.

Additionally, as noted in Copling, the Court has recognized that "a person can be provoked without actually witnessing the provoking assault on the relative." Id. at 429-30 (internal citations omitted); see also 2 LaFave & Scott,

14

§ 7.10 at 657-58 (2d ed.1986) (noting that words conveying information of a fact that would constitute adequate provocation had that fact been observed constitutes sufficient provocation). Thus, it is words conveying factual information of conduct toward a relative – rather than the words themselves – that here constitutes adequate provocation.

Also objectively present is a compressed period of time (forty-five minutes) sufficient to meet the second element. Mauricio, 117 N.J. at 412-13. Whether the provocation "actually impassioned" defendant and whether defendant failed to cool off before the slaying are subjective jury questions. Id. at 411; see also Funderburg, 225 N.J. at 80, 82. It is for a jury to determine whether by stopping for gas, visiting a housing complex, and "apparently [twice] sp[eaking] to Gonzalez," as the dissent observes, defendant had sufficient time to cool off.

In so ruling, we recognize that because the prosecution and defense were vested in all-or-nothing identification theories, neither they nor the trial court considered with any detail whether to include a passion/provocation manslaughter instruction. The entire discussion of lesser-included offenses consisted of this exchange:

15

> THE COURT: All right. Let's talk lesser included [offenses]. Are there any possible lesser included offenses?
>
> [ASSISTANT PROSECUTOR]: State submits that there's not, Your Honor.
>
> [DEFENSE COUNSEL]: I agree.
>
> THE COURT: Okay. No lesser included.

Notwithstanding this understandable oversight, it was plain error for the trial court not to administer a passion/provocation manslaughter instruction. In so concluding, we determine that failure to so charge likely led to an unjust result that is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Williams, 168 N.J. 323, 336 (2001) (quoting Macon, 57 N.J. at 336).

Finally, we stress that even where defendant relies exclusively on an identification defense for strategic considerations, "[t]he public interest in a correct verdict based on the evidence must trump the partisan strategic maneuvering of both the State and the defendant." Garron, 177 N.J. at 180. Such is the case here. The inconsistency of this charge with the defense stratagem, as highlighted in dissent, could and should have been assuaged with a jury charge explaining that when the law requires, the trial court has a duty to administer a charge for alternate theories of liability. Absent the administration

16

of a charge required by law, it is the defendant's right to a fair trial, rather than the integrity of the jury's verdict, that is at stake. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10.

B. Severance of the Aggravated Assault Charge.

As mentioned, defense counsel's motion to sever the aggravated assault charge was denied. In denying the application, the trial court ruled that joinder of the six counts into a single indictment was proper under Rule 3:7-6, which provides in pertinent part:

> Two or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together or constituting parts of a common scheme or plan.

Applying the four-prong test set forth in Cofield, the court found that evidence of the aggravated assault and theft would likely be admissible under N.J.R.E. 404(b) in a separate trial. Therefore, defendant would not be overly prejudiced by the inclusion of those charges in the indictment. The four-prong test under Cofield requires:

> (1) evidence of the other crime must be admissible as relevant to a material issue;

(2) it must be similar in kind and reasonably close in time to the offense charged;

(3) the evidence of the other crime must be clear and convincing; and

(4) the probative value of the evidence must not be outweighed by its apparent prejudice.

[127 N.J. at 338.]

We give great deference to the decision of the trial court in our review of its determination on the admissibility of evidence of other crimes under N.J.R.E. 404(b). State v. Lykes, 192 N.J. 519, 534 (2007). "Only where there is a 'clear error of judgment' should the 'trial court's conclusion with respect to that balancing test' be disturbed." State v. Marrero, 148 N.J. 469, 483 (1997) (quoting State v. DiFrisco, 137 N.J. 434, 496-97 (1994)).

We will not address the trial court's analysis of the first three prongs, as that analysis was legally sound. Here, our concern is limited to the fourth and most difficult prong to assess under Cofield. Due to the damaging nature of such evidence, the trial court must engage in a "careful and pragmatic evaluation" of the evidence to determine whether the probative worth of the evidence is outweighed by its potential for undue prejudice. Cofield, 127 N.J. at 334.

A-1148-22

"The trial judge should be careful to exclude other . . . crimes evidence, even though it is independently relevant, wherever he [or she] can reasonably do so without damaging the . . . prosecutor's case." State v. Stevens, 115 N.J. 289, 303 (1989) (quoting Report of the New Jersey Supreme Court Committee on Evidence 103 (1963)). To reduce inherent prejudice, trial courts are required to sanitize the evidence when appropriate. State v. Collier, 316 N.J. Super. 181, 195 (App. Div. 1998). In Collier, the court stated "[t]hat sanitizing accommodates the right of the proponent to present relevant evidence and the right of the objecting party to avoid undue prejudice." Ibid. at 195; see also State v. Brown, 180 N.J. 572, 584 (2004) (finding "that any potential for prejudice can be ameliorated by the sanitization of the predicate offense"); State v. Fortin, 318 N.J. Super. 577, 598 (App. Div. 1999) (noting that "at trial the judge must 'sanitize' the other-crime evidence by confining its admissibility to those facts reasonably necessary for the probative purpose of 'identity'").

Here, it was a clear error in judgment for the trial court not to sanitize the State's proofs regarding the aggravated assault charge. M.L. suffered visible injuries to her face, fingers, and neck. Of those injuries, superfluous testimony regarding choking were most likely to cause undue prejudice, as that aspect of the assault has an ineluctable propensity to suggest homicidal intent. Such

19

prejudice could have been readily avoided by permitting the State to present proofs of a physical assault while limiting glaringly prejudicial details, such as testimony regarding defendant choking M.L. by the neck.

Because we have ruled in defendant's favor on his arguments for a passion/provocation charge and severance questions, we need not reach his argument regarding the weight to be given to general deterrence as an aggravating factor in sentencing. N.J.S.A. 2C:44-1(a)(9).

In sum, we vacate defendant's convictions of first-degree murder and second-degree possession of a firearm for an unlawful purpose and vacate the sentence imposed on those counts. In addition, we reverse defendant's conviction of fourth-degree theft by unlawful taking, vacate the sentence imposed for that conviction, and dismiss with prejudice count four of the indictment charging that offense. We remand for resentencing on defendant's convictions for second-degree unlawful possession of a handgun without a permit and second-degree aggravated assault, which defendant did not challenge. Should this matter be retried on the vacated charges, the trial court must sanitize presentation of the aggravated assault charge as provided herein.

Vacated, reversed, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1148-22

_____

**GILSON, P.J.A.D., dissenting.**

The majority concludes that evidence of defendant becoming enraged when he looked at his girlfriend's text messages and saw she was buying drugs from Louis Gonzalez and, forty-five minutes later, twice shot and killed Gonzalez constitutes clear evidence that defendant was passionately provoked into shooting Gonzalez. I disagree and, therefore, dissent.

## I.

My dissent is based on four considerations. First, Gonzalez did not provoke defendant. Second, to the extent that defendant was ever passionately provoked, he had ample time to cool off before he shot Gonzalez. Third, we review this jury instruction issue for plain error, and I see none. Finally, our jurisprudence is based on the sound principle that a jury verdict should be respected, and I do not see clear grounds for vacating defendant's murder conviction.

"'[P]assion/provocation manslaughter,' occurs when a homicide which would otherwise be murder . . . is 'committed in the heat of passion resulting from a reasonable provocation.'" State v. Galicia, 210 N.J. 364, 378-79 (2012) (quoting N.J.S.A. 2C:11-4(b)(2)). Murder is punishable by a term of thirty years to life imprisonment with a period of parole ineligibility as prescribed by the No

Early Release Act (NERA). N.J.S.A. 2C:11-3(b)(1); N.J.S.A. 2C:43-7.2. In contrast, voluntary manslaughter is punishable by a term of imprisonment of five to ten years, subject to NERA. See N.J.S.A. 2C:11-4(c); N.J.S.A. 2C:43-6(a)(2); N.J.S.A. 2C:43-7.2.

Passion/provocation manslaughter has four elements: "(1) reasonable and adequate provocation; (2) no cooling-off time in the period between the provocation and the slaying; (3) a defendant who actually was impassioned by the provocation; [and] (4) a defendant who did not cool off before the slaying." Galicia, 210 N.J. at 379-80 (quoting State v. Josephs, 174 N.J. 44, 103 (2002)). The first two elements are "objective; thus, if they are supported by the evidence, the trial court should instruct the jury on passion/provocation manslaughter, leaving the determination of the remaining elements to the jury." Id. at 380 (quoting Josephs, 174 N.J. at 103).

"'[T]he passion sufficient to sustain a passion/provocation manslaughter verdict must disturb a defendant's reason,' [and] . . . this passion must 'deprive[] the killer of the mastery of understanding, a passion which was acted upon before a time sufficient to permit reason to resume its sway had passed.'" Id. at 379 (third alteration in original) (quoting State v. Pitts, 116 N.J. 580, 612 (1989)) (internal quotation marks omitted). Reducing an act that would

otherwise be murder to voluntary manslaughter is based on the rationale that when sufficiently provoked, a "person can understandably react violently to a sufficient wrong and hence some lesser punishment is appropriate." State v. Guido, 40 N.J. 191, 209-10 (1963). In considering the second element, "[t]he amount of time that passes between the provocation alleged and the killing, and the precise sequence of events, are thus pivotal factors in [the] determination." Galicia, 210 N.J. at 380.

A.     No Clear Provocation.

Gonzalez did not provoke defendant. Instead, defendant became outraged when he looked at his girlfriend's text messages at her apartment in Hamilton. Gonzalez was not present; rather, the evidence demonstrated that Gonzalez was in the neighboring city of Trenton, at least a mile away.

The majority points out that the New Jersey Supreme Court has "acknowledge[d] and embrace[d] the 'trend away from the usual practice of placing the various types of provocatory conduct into pigeon-holes.'" State v. Perry, 124 N.J. 128, 159 (1991) (quoting State v. Mauricio, 117 N.J. 402, 414 (1990)). The majority also points out that in determining whether to instruct a jury on passion/provocation manslaughter, the trial judge must view the evidence in the light most favorable to the defendant. See State v. Viera, 346

3

N.J. Super. 198, 212 (App. Div. 2001). Nevertheless, the facts of this case do not fall within the ambit of what an ordinary person would consider reasonable provocation. Gonzalez did not take any direct actions against defendant. Instead, defendant saw text messages between his girlfriend and Gonzalez. It is well-established that "words alone" do not "constitute adequate provocation to reduce murder to manslaughter." State v. Funderburg, 225 N.J. 66, 80 (2016) (quoting State v. Crisantos, 102 N.J. 265, 274 (1986)). In this case, there was no evidence that the text messages defendant saw were intended to or would reasonably provoke an ordinary person into a passionate rage to kill another person. There is a difference between becoming angry and being passionately provoked. See State v. Copling, 326 N.J. Super. 417, 430-31 (App. Div. 1999) (reasoning that there was insufficient provocation when the defendant killed the victim "in retaliation" after learning that the victim had attacked the defendant's younger brother the previous day).

The majority reasons that defendant "swiftly" reacted to seeing text messages concerning drug sales and assumes that the messages "struck at the core" of "his romantic relationship and the continuance of their family structure." That assumption ignores the fact that defendant assaulted his girlfriend just after she received a call from an unknown male and before he saw

4

any text messages from Gonzalez. Moreover, defendant's assault of his girlfriend belies any assumption that he was passionately enraged because of the potential that the girlfriend might overdose on heroin. Instead, the evidence of the assault and defendant's systematic tracking down of Gonzalez demonstrate a calculated but controlled anger—not passionate provocation.

The majority also reasons that seeing text messages about drug sales is analogous to "the surprise discovery of one's romantic partner in a sexual liaison." I suggest that analogy does not work. Defendant did not walk in and find his girlfriend using drugs that Gonzalez had sold to her. Instead, they were alone together, she received a call, he got angry, he assaulted her, he took her cell phone, and then he saw the text messages from Gonzalez.

The issue before us is not whether text messages to a loved one can ever constitute passion/provocation. Instead, the issue is whether those facts clearly indicated the need to charge the jury because the passion/provocation jumped off the page, such that the trial judge should have sua sponte given the charge. Because there are no cases directly on point and because an ordinary person would not be provoked into a homicidal rage by looking at text messages, I do not see clear evidence of a reasonable provocation of defendant.

B.     Ample Time to Cool Off.

5

The evidence also does not clearly indicate that defendant remained enraged between the time that he saw the text messages and the time that he shot Gonzalez. Defendant saw the text messages at approximately 8:00 p.m. He first assaulted his girlfriend, then took her cell phone and car keys, then drove around for approximately forty minutes. During the time he was driving, he stopped at a gas station and a housing complex, repeatedly called Gonzalez using the girlfriend's cell phone, and apparently spoke to Gonzalez at least twice. That evidence demonstrates that defendant had time to cool off before he twice shot Gonzalez. At a minimum, that evidence does not clearly show that he did not have time to cool off and that the trial court should have sua sponte given a passion/provocation charge. See State v. Mujahid, 252 N.J. Super. 100, 117 (App. Div. 1991) (holding that the proofs did not rationally support a passion/provocation charge when the defendant had a physical altercation with two residents of a rooming house, went home and talked to his brother-in-law, and returned to the rooming house approximately thirty minutes later with an "angry look on his face").

C.    No Plain Error.

As noted, we review whether the jury charge of passion/provocation should have been given for plain error. Defendant did not ask for a

6

passion/provocation charge. Instead, his counsel agreed with the State that there was no evidence of a lesser-included charge of murder, or any other charge against defendant. Critically, the decision not to request a passion/provocation charge was not an oversight. As the majority concedes, defendant's defense was based on a claim that he was not the shooter; that is, he claimed someone else shot Gonzalez. It would have been highly inconsistent to rely on that defense and then ask for a passion/provocation charge. In other words, the jury would have seen the obvious inconsistency in claiming that defendant was not the shooter but, if he was the shooter, he acted because of reasonable provocation.

D.    The Jury Verdict Should Be Respected.

Our State has always respected the use of juries in criminal matters. Indeed, that right is guaranteed in the United States and New Jersey Constitutions. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. Therefore, appellate courts should have clear grounds when they vacate a jury verdict.

In this case, a jury of twelve persons heard the evidence and unanimously found that defendant murdered Gonzalez. Inconsistent with the position he took at trial, defendant now argues that the trial judge should have sua sponte given the lesser-included charge of passion/provocation when instructing the jury on the murder charge. As I have emphasized, I do not see clear evidence of

7

passion/provocation. Therefore, I do not see clear grounds for reversing the unanimous jury verdict of murder. So, I would reject defendant's argument that the trial court erred in not giving a passion/provocation charge and affirm defendant's conviction of murder.

II.

Defendant raised four arguments in addition to his contention that the trial court erred in failing to give the passion/provocation jury instruction. On one of those issues, I disagree with the majority's conclusion. Specifically, I discern no abuse of discretion in the trial court's denial of defendant's motion to sever the aggravated assault charge from the murder charge.[1]

A.    The Denial of the Motion to Sever.

The majority concludes that the trial court erred in not sanitizing the aggravated assault evidence and that the probative value of the evidence was outweighed by its apparent prejudice because it was not properly sanitized. I disagree.

---

[1]  In accordance with <u>Rule</u> 1:36-3, the published version of this opinion omits discussion of the stipulation, theft charge, and the sentence discussed in the unpublished version in Part II, Sections B, C, and D of the dissent.

A-1148-22

Defendant argued that there was no material relationship between the assault of his girlfriend and Gonzalez's death. The trial court denied defendant's motion to sever, reasoning that the charges were properly joined under Rule 3:7-6 and that the evidence of the assault was admissible under N.J.R.E. 404(b). We review decisions to sever and the admission of evidence under an abuse of discretion standard. State v. Chenique-Puey, 145 N.J. 334, 341 (1996); State v. Fortin, 318 N.J. Super. 577, 594-95 (App. Div. 1999), aff'd, 162 N.J. 517, 535 (2000).

The trial court reasoned that joinder was proper under Rule 3:7-6 because of the proximity in time between the assault of the girlfriend and the shooting of Gonzalez. The court also reasoned that the evidence surrounding the aggravated assault was probative of defendant's motive to kill Gonzalez. See State v. Cofield, 127 N.J. 328, 338 (1992). In reaching that conclusion, the trial court analyzed each of the Cofield factors and found (1) that there was a logical connection between the aggravated assault and murder; (2) the assault was close in time to the murder; (3) the evidence of the assault was reliable; and (4) the evidence of the assault was not unduly prejudicial as it related to the murder charge.

The majority focuses only on the fourth prong and concludes that the evidence was unduly prejudicial. I do not see the evidence as unduly prejudicial. Instead, I discern no abuse of discretion. The trial court was in a better position to analyze the potential for prejudice. Unlike the majority, I do not deem evidence that defendant choked his girlfriend to be unduly prejudicial given that defendant was charged with aggravated assault of his girlfriend. I also discern no abuse of discretion in admitting that evidence to be considered in relation to the separate, but related, murder charge.

III.

In summary, I would affirm defendant's convictions on all crimes except for the theft. I would also affirm his sentence and remand to have the judgment of conviction amended to eliminate the conviction on the theft charge.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

10

A-1148-22